**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of _____

Case number (*If known*): _____ Chapter 15

☐ Check if this is an
amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

| | | |
|---|---|---|
| 1. | **Debtor's name** | _____ |

| | |
|---|---|
| 2. | **Debtor's unique identifier** |

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN)   ___ ___ – ___ ___ ___ ___ ___ ___ ___

☐ Other _____. Describe identifier _____.

**For individual debtors:**

☐ Social Security number:   xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ____ ____ ____ ____

☐ Other _____. Describe identifier _____.

| | |
|---|---|
| 3. | **Name of foreign representative(s)** |

_____

| | |
|---|---|
| 4. | **Foreign proceeding in which appointment of the foreign representative(s) occurred** |

_____

| | |
|---|---|
| 5. | **Nature of the foreign proceeding** |

*Check one:*

☐ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

| | |
|---|---|
| 6. | **Evidence of the foreign proceeding** |

☐ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____

_____

| | |
|---|---|
| 7. | **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?** |

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☐ Yes

Debtor _____     Case number *(if known)*_____
           Name

---

**8. Others entitled to notice**    Attach a list containing the names and addresses of:

    (i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

    (ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

    (iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9. Addresses**

**Country where the debtor has the center of its main interests:**

_____

**Debtor's registered office:**

_____
Number    Street

_____
P.O. Box

_____
City    State/Province/Region    ZIP/Postal Code

_____
Country

**Individual debtor's habitual residence:**

_____
Number    Street

_____
P.O. Box

_____
City    State/Province/Region    ZIP/Postal Code

_____
Country

**Address of foreign representative(s):**

_____
Number    Street

_____
P.O. Box

_____
City    State/Province/Region    ZIP/Postal Code

_____
Country

---

**10. Debtor's website** (URL)    _____

---

**11. Type of debtor**

*Check one:*

❑ Non-individual (*check one*):

    ❑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ❑ Partnership

    ❑ Other.  Specify: _____

❑ Individual

---

| Debtor | Noble Group Limited | | Case number (if known) 18-[        ] |
|---|---|---|---|
| | Name | | |

**12. Why is venue proper in *this district*?**

Check one:

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

The Debtor has issued certain bonds that are governed by New York law. Additionally, the Debtor has property in the United States in the form of a bank account._____.

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ _____        BROUGH, PAUL J
    Signature of foreign representative                    Printed name

Executed on   10 / 17 / 2018
                      MM / DD / YYYY

✗ _____        _____
    Signature of foreign representative                    Printed name

Executed on   _____
                      MM / DD / YYYY

**14. Signature of attorney**

✗ _____        Date   12/17/2018
    Signature of Attorney for foreign representative              MM / DD / YYYY

Marc Kieselstein, P.C.
Printed name

Kirkland & Ellis LLP
Firm name

601 Lexington Avenue
Number          Street

New York,                                          NY          10022
City                                                    State        ZIP Code

(212) 446-4800                          mkieselstein@kirkland.com
Contact phone                              Email address

4897302                                          NY
Bar number                                       State

## **Exhibit 1**

**Statement Pursuant to Bankruptcy Rule 1007(a)(4)**

James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Adam C. Paul, P.C. (*pro hac vice* pending)
Catherine Jun (*pro hac vice* admission pending)
Gerardo Mijares-Shafai (*pro hac vice* admission
pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § | Chapter 15 |
| | § | |
| NOBLE GROUP LIMITED, | § | Case No. 18-[_____] (___) |
| | § | |
| Debtor in a Foreign Proceeding.[1] | § | |
| | § | |

**STATEMENT PURSUANT TO BANKRUPTCY RULE 1007(a)(4)**

Paul J. Brough, in his capacity as the authorized foreign representative (the "Foreign Representative") of Noble Group Limited (the "Debtor" or "Noble"), which is the subject of a proceeding under Part 26 of the Companies Act 2006 of England and Wales before the Chancery Division (Companies Court) of the High Court of Justice of England and Wales (the "English Proceeding"), hereby submits this statement pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

**I.        Corporate Ownership Statement (Fed. R. Bankr. P. 7007.1).**

In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(A), the following is a corporate ownership statement of the Debtor, which identifies any corporation that directly or

---

[1]    The last four digits of Noble Group Limited's overseas company number are 5268.  The mailing address of Noble Group Limited's corporate office is Noble Group Limited, 11th floor, 33 Cavendish Square, Marylebone, London W1G 0PW United Kingdom.

indirectly owns 10 percent or more of any class of the Debtor's equity interests as of August 14, 2018:

- <u>Noble Holdings Limited</u>: Noble Holdings Limited directly owns 17.9% of Noble's ordinary shares, the Debtor's only class of equity interests.

**II.    Persons or Bodies Authorized to Administer Foreign Proceedings of the Debtor.**

In compliance with the requirements of Bankruptcy Rule 1007(a)(4)(B), the Debtor, as directed by its board of directors, will maintain control of and be authorized to administer the English Proceedings.  Additionally, Patrick Cowley of KPMG Advisory (Hong Kong) Limited, Michael Robert Pink of KPMG LLP and Michael William Morrison of KPMG Advisory Limited have been appointed as scheme administrators and, pursuant to the terms of the scheme of arrangement proposed in the English Proceedings, are authorized to administer the English Proceedings.  The service addresses for the Debtor and scheme administrators, respectively, are as follows:

    Noble Group Limited
    33 Cavendish Square Marylebone, London W1G 0PW
    United Kingdom
    The Scheme Administrators (Noble Group Limited)

    c/o KPMG Advisory (Hong Kong) Limited
    8th Floor
    Prince's Building
    10 Chater Road
    Central
    Hong Kong
    Attention: Patrick Cowley, Christopher Ball, Vicky Chan

**III.    Pending Litigation.**

The Debtor is not a party to any litigation in the United States at the time of the commencement of this chapter 15 case.

**IV.    Provisional Relief.**

As of the Petition Date, the Debtor is not seeking any provisional relief.

**V.    Additional Foreign Proceedings.**

The Debtor is also involved in a proceeding in Bermuda.

[*Remainder of page intentionally left blank*]

Dated: October 17, 2018
New York, New York

*/s/ Marc Kieselstein, P.C.*
James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

Adam C. Paul, P.C. (*pro hac vice* admission pending)
Catherine Jun (*pro hac vice* admission pending)
Gerardo Mijares-Shafai (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Foreign Representative*

## **Exhibit 2**

**Board Resolutions**

**Noble Group Limited**
(the "**Company**")
(incorporated in Bermuda)

**EXTRACT OF MINUTES** of a meeting of the Board of Directors of the Company held at 07.30a.m. UK time/2.30 p.m. HK time on Friday 12 October 2018 at the Head Office of Noble Group Limited, 11th Floor, 33 Cavendish Square, London W1G 0PW, United Kingdom

_____

1.    **DECLARATION OF INTERESTS**

In accordance with The Companies Act 1981 of Bermuda and the Bye-laws of the Company (the "**Bye-Laws**"), each of the Directors declared their interests (if any) in the transactions contemplated below and confirmed that he/she was not prohibited from voting or in counting towards the quorum for the Meeting.

2.    **SCHEMES OF ARRANGEMENT**

The Company has defaulted on its payment obligations under the 3.625% senior notes due 2018, 6.75% senior notes due 2020 and 8.75% senior notes due 2022 issued by the Company (collectively, the "**Existing Notes**") and the US$2,294,500,000 revolving credit facility agreement dated 18 May 2015 (the "**RCF Agreement**") between the Company as borrower and Madison Pacific Trust Limited as agent.

To effect an arrangement and compromise in respect of the Existing Notes, the loans under the RCF Agreement (the "**Existing RCF Loans**") and any other debt, liability or obligation of the Company (other than certain excluded liabilities, the "**Other Claims**"), the Company intends to:

(i)    propose inter-conditional schemes of arrangement (the "**Schemes**") to certain creditors of the Company under Part 26 of the Companies Act 2006 of England (the "**English Scheme**") and Section 99 of the Companies Act 1981 of Bermuda to the holders of the Existing Notes, Existing RCF Loans and Other Claims (together, the "**Scheme Creditors**"); and

(ii)    institute the filing of a recognition proceeding (the "**Chapter 15 Proceeding**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") for the Company to obtain recognition of the English Scheme as foreign main proceedings or, in the alternative, as foreign nonmain proceedings under chapter 15 of title 11 of the United States Code.

In order for the Schemes to become effective:

(i)    the Schemes must be approved by a simple majority in number representing at least three-fourths in value of the claims of Scheme Creditors in each class of Scheme Creditors who are present and voting (in person or by proxy) at the

Noble Group Limited
Extract Board Minutes – 12 October 2018 Board Meeting

meetings convened by the High Court of Justice of England and Wales (the "**English Court**") and the Supreme Court of Bermuda (the "**Bermuda Court**") for purposes of considering and, if thought fit, approving the Schemes; and

(ii)     a copy of the order of the English Court and Bermuda Court sanctioning the relevant Scheme must be delivered to the relevant companies registrar in England and Bermuda, respectively.

If the Schemes become effective, they will (under the laws of England and Wales and Bermuda) be binding on Scheme Creditors.

The proposed Schemes are part of a broader restructuring which contemplates a corporate reorganisation of the assets of the Company and its subsidiaries (the "**Group**"), a restructuring of the Group's liabilities (including the Existing Notes, Existing RCF Loans and Other Claims) and the commitment of new trade and hedging support facilities (the "**Restructuring**"). Among other things, the restructuring envisages:

(i)      a disposal of substantially all of the assets of the Company to Noble Group Holdings Limited ("**New Noble**") and a separation of certain assets of the Group such that there is an effective ring-fencing of: (i) the legal title to and/or full economic benefits of the Asset Co Assets (as defined in the Schemes) within the Asset Co Group (as defined in the Schemes and which will be a subsidiary group of New Noble); and (ii) the Core Business (as defined in the Schemes) within the Trading Co Group (as defined in the Schemes and which will be a subsidiary group of New Noble);

(ii)     a release by the Scheme Creditors of their claims (the "**Scheme Claims**") against the Company in exchange for a combination of bonds issued by Noble New Asset Co Limited ("**Asset Co**"), Noble Trading Co Limited, Noble Trading Hold Co Limited and shares issued by Noble Investors Limited (which will hold 70% of the issued and paid up capital of New Noble and 90% of the Preference Shares (as defined in the Schemes) of Asset Co), and a release of all residual Scheme Claims;

(iii)    the provision to New Noble of US$800 million in aggregate amount of new facilities, comprising:

(A)     the up to US$600 million trade finance facility to be provided by ING Bank N.V. ("**ING**") and Deutsche Bank AG, London Branch ("**DB**") in their capacities as fronting banks (the "**New Trade Finance Facility**");

(B)     the up to US$100 million hedging support facility to be provided by DB (the "**New Hedging Support Facility**"); and

2

Noble Group Limited
Extract Board Minutes – 12 October 2018 Board Meeting

      (C)     the US$100 million committed trade finance facility to be made available by a consortium of investors (including Value Partners Limited and Pinpoint Asset Management Ltd).

(iv)    the allocation of 20% and 10% of the issued and paid up capital of New Noble to the shareholders of the Company and a special purpose vehicle in which the management of the Group will be allocated shares, respectively;

(v)    the issuance of senior secured bonds by Asset Co to ING which will be redeemed in full on the Restructuring Effective Date (as defined in the Schemes) in consideration for the release and discharge by ING of all rights to principal and accrued interest in respect of the ING Claim (as defined in the Schemes); and

(vi)    the issuance of the senior secured bonds by Asset Co to DB in consideration for the release and discharge by DB of all rights to principal and accrued interest in respect of the DB Excluded Existing Senior Claims (as defined in the Schemes).

In connection with the foregoing:

(vii)    the Company is required to issue a scheme document to Scheme Creditors containing, among other things, an explanatory statement in relation to the Schemes and the terms of the Schemes ("**Explanatory Statement**");

(viii)    in the event the Schemes become effective and binding on Scheme Creditors, the Company will be required to enter into a number of documents, including *inter alia*, the Core Restructuring Documents (as defined in the Schemes) to which the Company is party and any other document contemplated by the Schemes, the Core Restructuring Documents and the Explanatory Statement (the "**Scheme Documents**").

Drafts of the Core Restructuring Documents and the Explanatory Statement (including the Schemes) have been presented to the Directors for their review. The Directors note that the drafts are being finalised and that the final document may vary from the relevant drafts presented today.

3.    **RSA**

It was noted that on 14 March 2018, the Company, Deutsche Bank AG, London Branch and an ad hoc group of certain existing senior creditors of the Group entered into the the restructuring support agreement (the "**RSA**") in respect of the restructuring of the financial indebtedness and corporate structure of the Company and its subsidiaries.

On 28 September 2018, the Company, the Majority Consenting Creditors and DB and ING in their capacities as both Bilateral Banks and Fronting Banks (each as defined in

Noble Group Limited
Extract Board Minutes – 12 October 2018 Board Meeting

the RSA) agreed to amend the definition of "Original Longstop Date" in the RSA to 27 November 2018.

Following developments in connection with the proposed Restructuring since 14 March 2018, the Company has agreed with the relevant parties to the RSA to enter into an amendment and restatement agreement in respect of the RSA to reflect such developments (the "**RSA Amendment & Restatement Agreement**").

4. **CRPA**

It was noted that on 14 March 2018, the Company and an ad hoc group of certain existing senior creditors of the Group entered into the conditional risk sub-participation agreement (the "**CRPA**") pursuant to which the creditors agreed to risk participate in the New Trade Finance Facility and New Hedging Support Facility for their respective commitments. On 9 April 2018, the CRPA was amended in accordance with its terms.

Following further developments in connection with the proposed Restructuring, the Company has agreed with the relevant parties to the CRPA to enter into a further amendment of the CRPA pursuant to an amendment and restatement agreement (the "**CRPA Amendment & Restatement Agreement**").

5. **CHAPTER 15 PROCEEDINGS**

The Company intends to seek recognition of the English Scheme as a "foreign main proceeding" or, in the alternative, as a "foreign nonmain proceeding" of the Company under Chapter 15 of the U.S. Bankruptcy Code in the Bankruptcy Court.

Section 101(24) of the Bankruptcy Code defines a "foreign representative" as a "person or body. . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

6. **EXCHANGE OFFER**

It was noted that the Company issued US$350,000,000 in aggregate principal amount of perpetual capital securities on 24 June 2014 and an additional US$50,000,000 in aggregate principal amount of perpetual capital securities on 10 July 2014 (collectively, the "**Existing Securities**") pursuant to a trust deed dated 24 June 2014 and supplemented on 10 July 2014 (and as may be further amended, supplemented or modified from time to time) (the "**Existing Trust Deed**") between the Company, as issuer, and DB Trustees (Hong Kong) Limited ("**DB Trustees**"), as trustee (the "**Existing Trustee**").

It was noted that the Company and New Noble propose to make an offer to the holders of the Existing Securities (the "**Existing Securities Holders**") to exchange (the "**Exchange Offer**") any and all of their Existing Securities for new perpetual capital securities to be

4

Noble Group Limited
Extract Board Minutes – 12 October 2018 Board Meeting

issued by New Noble (the "**New Securities**") and cancel all Arrears of Distribution and any Additional Distribution Amounts (each as defined in the Existing Trust Deed) that have accrued or are otherwise due on the Existing Securities.

In connection with the Exchange Offer, the Company will solicit consents from the Existing Securities Holders to (i) certain proposed amendments to the Existing Trust Deed (the "**Proposed Amendments**"), and (ii) vote in favour of certain matters in accordance with such Proposed Amendments ((i) and (ii) together, the "**Consent Solicitation**", and together with the Exchange Offer, the "**Offer**"), including (a) a transfer of all Existing Securities from all Existing Securities Holders to New Noble and (b) a waiver and release of, and an agreement not to sue in respect of, any rights or claims that each Existing Securities Holder ever had, has or may have against, among others, the Company or New Noble arising out of or in connection with the Existing Securities, the Existing Trust Deed, the Offer and the Restructuring, in each case, pursuant to an extraordinary resolution to be proposed at a meeting of the Existing Securities Holders (the "**Extraordinary Resolution**").

For this purpose, an exchange offer memorandum and consent solicitation statement will be issued and sent to Existing Securities Holders setting out the key aspects of the Offer (the "**Exchange Offer Memorandum**").

It was noted that the Company and New Noble are proposing the Offer as part of the Company's comprehensive plan to refinance its capital and corporate structure pursuant to the Restructuring of the Group substantially in accordance with the RSA.

It was noted that certain Existing Securities Holders (including Value Partners Limited and Pinpoint Asset Management Ltd), who collectively own approximately 42.9% of the aggregate principal amount of outstanding Existing Securities, have agreed, pursuant to certain support agreements dated 22 June 2018 between the Company and such Existing Securities Holders (the "**Support Agreements**"), to validly tender all of their Existing Securities in the Exchange Offer and to vote in favour of the Extraordinary Resolution upon the terms and conditions set forth in the Exchange Offer Memorandum.

It was noted that on 6 September 2018, the Company entered into an engagement letter with DB Trustees pursuant to which the Company appointed DB Trustees as the trustee for the New Securities (the "**DB Engagement Letter**"). In addition, it was noted that on 13 September 2018, the Company entered into an engagement letter with Lucid Issuer Services Limited ("**Lucid**") pursuant to which the Company appointed Lucid as the exchange and tabulation agent for the Exchange Offer and holding period trustee for the New Securities (the "**Lucid Engagement Letter**" and together with the DB Engagement Letter, the "**Engagement Letters**").

It was noted that apart from the Support Agreements and the Engagement Letters, in connection with the Offer, the Company will be required to approve and as the case may

Noble Group Limited
Extract Board Minutes – 12 October 2018 Board Meeting

be, issue and/or enter into certain agreements, instruments, notices or documents including (without limitation) any or all of the following:

(i)      the Exchange Offer Memorandum;

(ii)     a notice convening a meeting of the Existing Securities Holders to consider the Extraordinary Resolution;

(iii)    an announcement relating to the Offer; and

(iv)     a supplemental trust deed to the Existing Trust Deed between the Company and the Existing Trustee (the "**Supplemental Trust Deed**"),

the "**Exchange Offer Documents**", and together with the the Scheme Documents, the RSA Amendment & Restatement Agreement, the CRPA Amendment & Restatement Agreement and any other ancillary documents contemplated thereunder and/or in relation to the Offer, the Schemes, the RSA Amendment & Restatement Agreement and the CRPA Amendment & Restatement Agreement, the "**Documents**".

It was noted that the purpose of the Meeting was to discuss and, if thought fit, approve the entry by the Company into the agreements and deeds necessary to effect the Offer and entry into the Documents.

7.    **CONFIRMATION AND CONSIDERATION**

Each of the Directors of the Company:

(a)      has confirmed that the Exchange Offer Memorandum will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading; and

(b)      is satisfied that  the offer of the New Securities to be issued is not calculated to result, directly or indirectly, in shares (as defined in section 25(1) of the Companies Act 1981) becoming available to persons other than persons whose ordinary business involves the acquisition, disposal or holding of shares (as defined in section 25(1) of the Companies Act 1981), whether as principal or agent, and that no invitation has been or will be made by or on behalf of the Company to the public in Bermuda to subscribe for any of the New Securities.

8.    **RESOLUTIONS**

After due and careful consideration, having regard to what would be most likely to promote the success of the Company for the benefit of its members as a whole it was RESOLVED THAT**:**

Noble Group Limited
Extract Board Minutes – 12 October 2018 Board Meeting

(a)     the Offer, the Schemes and the transactions contemplated thereunder are in the best interests of the Company, and it is in the interests and for the corporate benefit of the Company, and be and are hereby approved;

(b)     the Documents and transactions contemplated thereunder be and are hereby approved;

(c)     any two Directors of the Company or any Director together with the Group General Counsel (Mr. Jeffrey Alam) or the Group Chief Financial Officer (Mr. Paul Jackaman) or the Company Secretary (together the "**Authorized Signatories**") acting jointly, on behalf of the Company, from time to time, be and are hereby authorized on behalf of the Company to negotiate, approve, agree and finalise any amendments to the Documents as such Authorized Signatories shall in their absolute discretion think necessary or desirable and any one Authorized Signatory (whether under hand or seal) be authorized and directed to execute, initial and/or deliver such Documents on behalf of the Company (save for the Officer's Certificate, in which case any two of the Directors be authorized and directed to execute the Officer's Certificate), and whose signatures thereto shall be conclusive evidence of the Authorized Signatory's approval to such amendments on behalf of the Company and shall be valid, binding and enforceable against the Company in the manner executed and delivered as aforesaid;

(d)     the entry into, execution, delivery and performance of the Documents be and are hereby authorized, approved, confirmed and/or ratified and the execution of the Support Agreements and Engagement Letters by any one Authorized Signatory for and on behalf of the Company be and are hereby approved, confirmed and ratified;

(e)     any one Authorized Signatory acting on behalf of the Company be and is hereby authorized and directed to approve and/or finalise the terms of the Offer, the Schemes, and/or the Restructuring;

(f)     any one Authorized Signatory be and is hereby authorized to give, make, execute (whether under hand or seal) and deliver such notes, deeds, agreements, letters, notices, applications, certificates, instructions and other documents, or do such act or thing, as the Authorized Signatory or may in its opinion deem to be necessary or desirable for purpose of giving effect to the Offer, the Schemes, and/or the Restructuring and any of the Documents or compliance with any condition precedent or the coming into effect of or otherwise consummating or completing or procuring the performance and completion of the transactions contemplated by or referred to in all or any of the Documents, or to comply with any legal or regulatory requirements by virtue of the entry into any of the Documents, and generally to carry out the full intent and purposes of the foregoing resolutions;

7

Noble Group Limited
Extract Board Minutes – 12 October 2018 Board Meeting

(g)     the amendment and restatement agreements in respect of the RSA and CRPA be and is hereby approved;

(h)     the Company is authorised to appoint, for a one-year period beginning as of the date hereof, as the Company's legal foreign representative, Paul Brough, Chairman of the Board; or Jeffrey Alam, General Counsel to the Company, (whichever so appointed, the "**Authorized Representative**"). The Authorized Representative will have specific powers to individually bind and represent the Company with respect to the Schemes, including for the purposes of seeking any relief available to a "foreign representative" in the Chapter 15 Proceeding;

(i)     the Authorized Representative is authorized to act as the Company's agent in seeking any relief available to a "foreign representative" in the Chapter 15 Proceeding;

(j)     the Authorized Representative is authorized and empowered to execute and verify or certify a petition under Chapter 15 on behalf of, and in the name of, the Company, and to cause the same to be filed in the Bankruptcy Court in such form or forms as such Authorized Representative may approve;

(k)     the Authorized Representative is authorized and empowered to retain and employ on his own behalf in his capacity as "foreign representative," at the expense of the Company, the law firm of Kirkland and Ellis LLP, in connection with pursuing the Chapter 15 Proceeding as the "foreign representative;"

(l)     the Authorized Representative is authorized to execute and file any and all petitions, schedules, motions, lists, applications, pleadings, declarations, and other papers, and to take any and all further actions which the Authorized Representative or the Company's legal counsel may deem necessary, proper, or desirable in connection with the Chapter 15 Proceeding, with a view to the successful resolution of such case;

(m)     any and all agreements, instruments and other documents whatsoever, and any and all actions whatsoever, executed, delivered and/or taken by any one Authorized Signatory on behalf of the Company in connection with the subject matter of these resolutions be and are hereby approved, ratified and confirmed in all respects as the acts and deeds of the Company;

(n)     the Company Secretary of the Company or any one of the Authorized Signatories be authorized to approve and release any announcement, notice or press release relating to the Offer and the Chapter 15 Proceeding as may be required; and

(o)     any of the foregoing matters set out in these resolutions that have been done on or before the date hereof be and are hereby adopted, ratified, confirmed and approved.

8

Noble Group Limited
Extract Board Minutes – 12 October 2018 Board Meeting

Certified True Copy

_____

Paul Brough
Chairman
Noble Group Limited
Date: 12 October 2018

## **Exhibit 3**

**Certified Convening Order for UK Proceedings**

CR-2018-008453

16 Oct 2018

CR-2018-008453

**IN THE HIGH COURT OF JUSTICE**

**BUSINESS AND PROPERTY COURTS**

**OF ENGLAND AND WALES**

**COMPANIES COURT (ChD)**

**Before:**

**THE HONOURABLE MR JUSTICE SNOWDEN**

**16 OCTOBER 2018**

**IN THE MATTER OF NOBLE GROUP LIMITED**

**AND IN THE MATTER OF THE COMPANIES ACT 2006**

-------------------------------------------

**ORDER TO CONVENE MEETINGS**

-------------------------------------------

**UPON THE APPLICATION** by Part 8 claim form dated 8 October 2018 (the "**Claim Form**") by the Noble Group Limited (the "**Company**")

**AND UPON HEARING** William Trower QC for the Company and David Allison QC and Stephen Robins for the Ad Hoc Group

**AND UPON READING** the Claim Form, the First Witness Statement of Paul Brough dated 9 October 2018, the Second Witness Statement of Paul Brough dated 14 October 2018, the First Witness Statement of Ben Burger dated 15 October 2018 and the First Witness Statement of Neil Devaney dated 15 October 2018.

**AND UPON** the Court adopting in this Order, save where terms are otherwise expressly defined, the definitions contained in the proposed scheme of arrangement promulgated by the Company pursuant to Part 26 of the Companies Act 2006 (the "**Scheme**") and the draft explanatory statement to be

made in relation to the Scheme pursuant to section 897 of the Companies Act 2006 (the "**Explanatory Statement**")

**AND UPON** the board of directors of the Company having appointed Paul Brough or Jeffrey M. Alam to act as the Company's representative in respect of the Scheme in any case under Chapter 15 of the U.S. Bankruptcy Code

**IT IS ORDERED AND DIRECTED THAT:**

1. The Company is at liberty to convene two meetings of its Scheme Creditors (the "**Scheme Meetings**") pursuant to Part 26 of the Companies Act 2006 for the purpose of considering, and if thought fit, approving (with or without modifications) the Scheme proposed to be made between the Company and its Scheme Creditors. Of these Scheme Meetings:

    a. the first Scheme Meeting shall be for all of the Scheme Creditors save for Deutsche Bank AG, London Branch ("**DB**") (the "**Class One Meeting**").

    b. the second Scheme Meeting shall be for DB (the "**Class Two Meeting**").

2. The Class Two Meeting shall commence at 1:00 p.m. London time on 8 November 2018 (or such later time or date as the Company may decide).

3. The Class One Meeting shall commence immediately after the Class Two Meeting concludes.

4. The Scheme Meetings shall be held at the offices of Kirkland & Ellis International LLP, 30 St Mary Axe, London, EC3A 8AF (or if such venue is not available, such other suitable venue in London as the Company may select).

5.     A copy of the document incorporating the Scheme, the Explanatory Statement, the Notice of the Scheme Meetings and the Voting/Proxy Form (together, the "**Scheme Documentation**"):

   a. be provided (via the Information Agent) to all persons whom the Company believes are or may be Scheme Creditors by email or post (to the extent that the Company holds such contact details) as soon as practicable and in any event by 4:30 pm on 17 October 2018;

   b. be available to Scheme Creditors as soon as practicable and in any event from 4:30 pm on 17 October 2018 to be inspected upon request at the offices of Lucid Issuer Services Limited, Tankerton Works, 12 Argyle Walk, London WC1H 8HA, for the attention of Sunjeeve Patel and Victor Parzyjagla, between 9.30 am and 5.30 pm on each Business Day until the conclusion of the Scheme Meetings; and

   c. be made available to Scheme Creditors as soon as practicable and in any event by 4:30 pm on 17 October 2018 by accessing following website: www.lucid-is.com/newnoble.

6.     Until the date of the Scheme Meetings, Scheme Creditors may request hard copies of the Scheme Documentation from Kirkland & Ellis International LLP (contacts: Kon Asimacopoulos, Matthew Czyzyk and Hannah Crawford; email addresses: kon.asimacopoulos@kirkland.com / matthew.czyzyk@kirkland.com / hannah.crawford@kirkland.com) and when so requested shall be provided with them free of charge.

7.     The Scheme Documentation shall be in the form or substantially in the form of the drafts of the same submitted to the First Witness Statement of Paul Brough and initialed by the Court for identification purposes, together with such further amendments as may be advised by Counsel.

8.    Unless the Court orders otherwise, the accidental omission to serve any Scheme Creditor with notice of the Scheme Meetings or the Voting/Proxy Form relating to the Scheme Meetings or the non-receipt of notice of the Scheme Meetings or a Voting/Proxy Form relating to the Scheme Meetings by a Scheme Creditor shall not invalidate the proceedings at the Scheme Meetings.

9.    Scheme Creditors wishing to vote at the Scheme Meetings must:

   a. attend the Scheme Meeting at which it is entitled to vote (with the appropriate documentation as provided in the Explanatory Statement), and vote in person, or send a proxy to attend with a completed form of proxy;

   b. by 5:00 p.m. on 5 November 2018, submit the appropriate documentation as provided in the Explanatory Statement and (if applicable) a completed form of proxy either:

      i.  by electronic mail to projectnewnoble@lucid-is.com; or

      ii. in respect of hard copy forms;

         1. by first-class post or air mail addressed to Lucid Issuer Services Limited, Tankerton Works, 12 Argyle Walk, London WC1H 8HA, for the attention of Sunjeeve Patel and Victor Parzyjagla (with proof of receipt); or

         2. arrange for a hard copy form of proxy to be delivered by hand to the Chairman at the Scheme Meeting at which such Scheme Creditor is entitled to vote.

10.   Mr Patrick Cowley or, in his absence, Mr Michael Pink be appointed to act as chairman of the Scheme Meeting (the "**Chairman**") and be directed to report the results of the Scheme Meetings to the Court.

11.   The Chairman shall:

   a.  oversee voting;

   b.  have discretion (without prejudice to the generality of paragraph 11(d) below):

      i.  To accept the value of the claim in respect of which a Scheme Creditor seeks to vote, in whole or in part, notwithstanding failure by such Scheme Creditor to comply with the requirements contained in the form of proxy;

      ii.  To accept otherwise incomplete or late forms of proxy (but, for the avoidance of doubt, provided that the form of proxy is received before he closes the relevant Scheme Meeting); and

      iii.  In the event of a vote being cast by more than one creditor in respect of the same debt, to count only the votes of the person with the ultimate economic interest in that debt.

   c.  be at liberty to rely on the electronic confirmations (in respect of electronic forms of proxy) or signatures (in respect of hard copy forms of proxy) as a warranty that the signatory (or person submitting such confirmation) has been duly authorised by the relevant Scheme Creditor;

   d.  be responsible for, and have discretion to determine, in accordance with the relevant provisions in the Explanatory Statement, the entitlement of and value for which any Scheme Creditor is permitted to vote at the Scheme Meetings;

   e.  be at liberty to permit the attendance of persons who are not otherwise entitled to attend and vote at the Scheme Meetings

provided that such a person shall not be entitled to speak at the Scheme Meetings without the permission of the chairman and provided that no objection is received from a person entitled to attend the relevant Scheme Meeting;

f.  be at liberty to adjourn the Scheme Meetings to the same or another place in London, provided that, if adjourned, the Scheme Meeting in question recommences as soon as reasonably practicable thereafter; and

g.  have permission to apply for such further directions as he may consider necessary or appropriate.

12.   A Scheme Creditor may appoint more than one person as their proxy and, if the appointee is not the Chairman, may provide in the appointment that the appointee may vote in the appointee's absolute discretion. Any person validly appointed as proxy for a Scheme Creditor may attend and speak at the Scheme Meetings.

13.   A representative from Lucid Issuer Services Limited, of appropriate seniority, will act as a scrutineer and be responsible for confirming the results of the Scheme Meetings and providing the Chairman with a report setting out the results of the Scheme Meetings.

14.   The Chairman be required to file a report on the Scheme Meetings and the voting by 10.00 a.m. on Friday 9 November 2018 (assuming the requisite majority is obtained at the Scheme Meetings).

15.   If the Scheme is approved at the Scheme Meetings by the required statutory majority, the Claim Form shall be restored and a further Court hearing at which the Company shall seek the sanction of the Court to the Scheme shall be listed on Monday 12 November 2018.

16.  Pursuant to rule 5.4D(2) of the Civil Procedure Rules, at least two clear days' notice shall be given to the Company of any application made by a person for permission under rule 5.4C of the Civil Procedure Rules to obtain a copy of a document from the court records in this matter.

17.  If and to the extent that the provisions of rule 32.13(2) of the Civil Procedure Rules apply in relation to evidence filed in this matter, until further order it is directed that the Second Witness Statement of Paul Brough dated 14 October 2018 be not open to inspection save with the permission of the Court.   Any application to inspect such witness statement shall be on at least two clear days' notice to the Company.

18.  The Claim Form be adjourned for further hearing.

**AND IT IS DECLARED** that:

19.  Paul Brough or Jeffrey M. Alam (each an "**Authorized Representative**") have been validly appointed by the board of directors of the Company to represent the Company and act as the Company's agent in seeking any relief available to a "foreign representative" under Chapter 15 of the U.S. Bankruptcy Code in respect of the Scheme.

20.  The Authorized Representative has been authorised by the Company to take any and all actions to execute, deliver, certify, file and/or record and perform any and all documents, agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities, or certificates, and to take any and all steps deemed by the Authorized Representative to be necessary or desirable to carry out the purpose and intent of the Scheme including, for the avoidance of doubt, filing any petition for recognition of the Scheme, the enforcement of this order and the sanction order (if approved) and any other related relief under Chapter 15 of the U.S. Bankruptcy Code, to the extent required.

21.    There be liberty to apply, such application to be made to Mr Justice Snowden (if available).

**Service of the order**

The Court has provided a sealed copy of this order to the serving party;

Kirkland and Ellis LLP, 30 St. Mary Axe, London EC3A 8AF

**DATED** this 16th day of October 2018

CR-2018-008453

**IN THE HIGH COURT OF JUSTICE**

**BUSINESS AND PROPERTY COURTS**

**OF ENGLAND AND WALES**

**CHANCERY DIVISION (ChD)**

**COMPANIES COURT**

**Before:**

**THE HONOURABLE MR JUSTICE SNOWDEN**

**16 OCTOBER 2018**

**IN THE MATTER OF**

**NOBLE GROUP LIMITED**

**AND**

**IN THE MATTER OF THE COMPANIES ACT 2006**

_____

**ORDER TO CONVENE MEETINGS**

_____