James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Adam C. Paul, P.C. (*pro hac vice* pending)
Catherine Jun (*pro hac vice* admission pending)
Gerardo Mijares-Shafai (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § § | Chapter 15 |
| NOBLE GROUP LIMITED, | § § | Case No. 18-[_____] (___) |
| Debtor in a Foreign Proceeding.[1] | § § § | |

**VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Paul J. Brough (the "Petitioner" or "Proposed Foreign Representative"), in his capacity as the authorized representative of Noble Group Limited ("Noble" or the "Debtor")[2] regarding Noble's pending foreign restructuring proceedings (the "English Proceedings") concerning the Debtor through a proposed scheme of arrangement (the "English Scheme") before the Chancery Division (Companies Court) of the High Court of Justice of England and Wales (the "English Court"), by and through his undersigned counsel, respectfully submits this verified petition (the "Verified Petition") for recognition of the English Proceedings pursuant to section

---

[1]  The last four digits of Noble Group Limited's overseas company number are 5268. The mailing address of Noble Group Limited's corporate office is Noble Group Limited, 11th floor, 33 Cavendish Square, Marylebone, London W1G 0PW United Kingdom.

[2]  For the avoidance of doubt, Noble, as used in this Verified Petition, refers only to Noble Group Limited and not to any of its subsidiaries or any consolidated entity.

1517 of title 11 of the United States Code (the "Bankruptcy Code") as a "foreign main proceeding," or, in the alternative, as a "foreign nonmain proceeding," and for additional relief pursuant to sections 1520 and 1521 of the Bankruptcy Code, in support of *Chapter 15 Petition for Recognition of a Foreign Proceeding* [Docket No. 1] (the "Form Petition" and, collectively with the Verified Petition, the "Chapter 15 Petition").

In support of the Chapter 15 Petition, the Petitioner has concurrently filed herewith the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of the Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (the "Brough Declaration") and the *Declaration of Kon Asimacopoulos as English Counsel to the Debtor in Support of the Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (the "Asimacopoulos Declaration"), which are incorporated herein by reference.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  The Debtor confirms its consent, pursuant to Federal Rule of Bankruptcy Procedure 7008, to the entry of a final order by the Court in connection with the Verified Petition to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the English Proceedings under section 1515 of the Bankruptcy Code.

3.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Specifically, venue is proper under 28 U.S.C. § 1410(1) as Noble's principal assets in the United States are located in the Southern District of New York.  *See* 28 U.S.C. § 1410(1); *see also In re Berau Capital Res. Pte Ltd*, No. 15-11804 (MG), 2015 WL 6507871 (Bankr. S.D.N.Y. Oct. 28, 2015) (holding that a debtor's bank accounts and contract rights are intangible property of the debtor).  More specifically, the Debtor has property in the United States in the form of bank accounts with JPMorgan Chase & Co. in New York, New York.  Additionally, the Debtor has either issued or guaranteed certain bonds that are governed by New York law.

## **Relief Requested**

4.       The statutory bases of relief requested herein is pursuant to sections 1515, 1517, 1520, 1521, and 1522 of the Bankruptcy Code and rule 9013-1(a) of the Local Rules for the Southern District of New York (the "<u>Local Rules</u>").  The Petitioner requests that this Court enter an order, substantially in the form of the proposed order (the "<u>Order</u>") attached hereto as **<u>Exhibit A</u>**, that:[3]

> a.      grants recognition of the English Proceedings as "foreign main proceedings" (as defined in section 1502(4) of the Bankruptcy Code) or, in the alternative, as "foreign nonmain proceedings" (as defined in section 1502(5)), and grants all of the relief afforded to such proceedings, pursuant to sections 1517(a) and (b) of the Bankruptcy Code;

---

[3]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the explanatory statement for the Schemes ("<u>Explanatory Statement</u>"), attached hereto as **<u>Exhibit B</u>**.  To the extent any of the descriptions herein conflict with those provided in the Explanatory Statement, the Explanatory Statement shall control in all respects.

b.      recognizes the Petitioner as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the English Proceedings;

c.      entrusts the Petitioner with the administration of any and all of the Debtor's assets within the territorial jurisdiction of the United States;

d.      provides that, as of completion of the various steps set out in Part B, Clause 9 of the Explanatory Statement, the releases described in Part F, Clause 12.2 and Appendix 11 of the Explanatory Statement are recognized, granted comity, and entitled to full force and effect against all entities (as that term is defined in section 101(15) of the Bankruptcy Code) in accordance with their terms, and such terms shall be binding and fully enforceable on all Scheme Creditors whether or not they actually agreed to be bound by the English Scheme or participated in the English Proceedings;

e.      provides that no action taken by the Petitioner in preparing, filing, serving, implementing or otherwise acting in furtherance of the English Scheme, the chapter 15 case, or any further order for additional relief in this chapter 15 case, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Petitioner as foreign representative, including without limitation, pursuant to section 1510 of the Bankruptcy Code;

f.      confirms the automatic stay protection of section 362 of the Bankruptcy Code, applicable under section 1520;

g.      grants additional relief under sections 1521 and 1507 of the Bankruptcy Code;

h.      provides that this Court shall retain jurisdiction with respect to the effect, enforcement, amendment, or modification of such order;

i.      recognizes and enforces the English Scheme, the Convening Order (as defined herein), and the Sanction Order in the United States; and

j.      provides such other and further relief as this Court deems proper and just.

## **Preliminary Statement**

5.      The Petitioner has commenced this case pursuant to sections 1504, 1509, and 1517 of the Bankruptcy Code.  The Petitioner seeks recognition of a foreign proceeding that is currently pending before the English Court, corresponding relief as of right under section 1520 of the Bankruptcy Code, and further relief available under section 1521 of the Bankruptcy Code.  As set forth herein, the requested relief is appropriate because, among other reasons:  (i) the English

4

Proceedings are foreign proceedings (as courts, including this Court, have consistently found in respect of English schemes of arrangement); (ii) Noble's center of main interest is located in England; and (iii) the Petitioner is a proper foreign representative.  Moreover, the English Proceedings provide substantial due process rights to Noble's affected creditors and such due process sufficiently protects their interests and is consistent with, and not manifestly contrary to, United States public policy.

6.      The purpose of the English Proceedings is for Noble to convene meetings of the Scheme Creditors to vote on whether to implement the proposed English Scheme for restructuring those creditors' claims in furtherance of the broader restructuring (as defined and discussed in detail in the Explanatory Statement, the "Restructuring").  If the proposed English Scheme is approved by the requisite majority of the Scheme Creditors, the English Court will then consider whether to enter an order sanctioning (*i.e.*, approving) the English Scheme (the "Sanction Order").

## General Background

### I.      Introduction to Noble and the Noble Group.

7.      Noble is the ultimate holding company of a multinational physical commodity trading enterprise (collectively, "Noble Group" or the "Company") which manages a portfolio of global supply chains covering a range of industrial and energy products.[4] As a full service supply manager, Noble Group provides to its customers (a) logistics and transportation services, (b) price risk management and hedging services, and (c) structured and trade financing.[5]

8.      The Debtor, Noble, maintains its corporate office in London, England and is listed on the Singapore Exchange Limited.[6]  As parent company, Noble holds shares in a number of

---

[4]      *See* Brough Decl. ¶ 5-6.  Noble Group's organization chart is attached hereto as **Exhibit C**.

[5]      *See* Brough Decl. ¶ 5.

[6]      *See id.* ¶ 4.

intermediate holding companies incorporated in several jurisdictions including Bermuda, the British Virgin Islands, Singapore, and Hong Kong, which in turn own shares in additional holding companies and operating companies in various jurisdictions.[7]  Noble's principal roles are to direct strategy for Noble Group, issue debt, and perform treasury functions with respect to the use of cash throughout Noble Group.  As such, all major sources of funding for Noble Group's functions were incurred by Noble and on-lent to other members of Noble Group.[8]  Noble's financial obligations are governed under the laws of several jurisdictions, including England and New York state.[9]

## II.    Events Giving Rise to the Restructuring.

9.    As described in the Brough Declaration, the difficulties faced by Noble Group began with the industry-wide fall of commodity prices from 2014 to early 2017, and the corresponding reduction in the availability of willing lenders as they reduced their exposure to the sector.[10]  Noble Group experienced downgrades from credit rating agencies and an increased cost of financing its physical commodities trading.[11]  As a consequence, Noble Group posted large financial losses, which severely weakened the confidence of its lenders, trading counterparties, suppliers, and customers.[12]

10.    In response to these challenges, Noble Group implemented a number of initiatives to reduce indebtedness, sell assets, and focus Noble Group on its core hard commodities, freight, and LNG businesses, where it has a leading position in Asia.[13]  In May 2017, Noble Group initiated

---

[7]    *See id.* ¶ 5.

[8]    *See id.*

[9]    *See id.*

[10]    *See id.* ¶ 9.

[11]    *See id.*

[12]    *See id.* ¶ 10.

[13]    *See id.* ¶ 11.

a strategic review of its capital structure and retained Kirkland & Ellis LLP and Moelis & Company to provide restructuring advice and engage in negotiations with its lenders.[14]  In the months that followed, Noble Group negotiated covenant waivers and extensions under several of its debt facilities, thereby staving off default and enabling the Company to pursue the orderly disposal of certain businesses.[15]  Despite these efforts, Noble Group's operations continued to deteriorate, with Noble Group reporting a total net loss of $4.9 billion for the year ended December 31, 2017.[16]  The loss included further significant write-downs in the accounting value of Noble Group's long-term physical commodity contracts—reflecting reserves and valuation adjustments to account for increased risks relating to Noble Group's operating environment, trading terms, and access to financing.[17]

11.      Additionally, Noble commenced extensive negotiations with an ad hoc group of Existing Senior Creditors (as such group is constituted from time to time, the "Ad Hoc Group") and its bilateral trade line financiers, Deutsche Bank AG, London Branch ("DB") and ING Bank N.V. ("ING").[18]  As a result of those negotiations, on March 14, 2018, Noble, the Ad Hoc Group, and DB entered into a restructuring support agreement (as may be amended, supplemented, or otherwise modified from time to time, the "RSA").[19]  On March 27, 2018, ING acceded to the RSA.[20]  The RSA, which is governed by English law, contemplates proposing two parallel schemes of arrangement to restructure Noble's funded debt—the English Scheme, under Part 26 of the Companies Act 2006 of England and Wales, and another under section 99 of the Companies

---

[14]    *See id.*

[15]    *See id.* ¶ 11.

[16]    *See id.* ¶ 13.

[17]    *See id.*

[18]    *See id.* ¶ 14-16.

[19]    *See id.* ¶ 16.

[20]    *See id.*

Act 1981 of Bermuda (the "<u>Bermudan Scheme</u>" and together with the English Scheme, the "<u>Schemes</u>"), with the English Scheme.[21]  On April 16, 2018, Noble announced that Existing Senior Creditors representing over 83% of the Existing Senior Claims had acceded to the RSA. Among other things, the RSA provided for a moratorium on all enforcement action by acceding creditors against Noble.  The RSA was subsequently amended on September 28, 2018 to extend the moratorium to November 27, 2018.[22]  The proposed Restructuring has been approved by 99.96 percent of Noble's shareholders, as formally recognized by a vote of the shareholders on August 27, 2018.[23]

12.    In addition to approving the Restructuring, the independent shareholders agreed to waive their rights, under Singapore law, to receive a mandatory general offer from the Senior Creditor SPV (the "<u>Whitewash Waiver</u>"), which is necessary because: (a) the Restructuring calls for the transfer of substantially all of Noble's assets to a new Bermuda holding company, Noble Group Holdings Limited ("<u>New Noble</u>") and transfer of the listing status from Noble to New Noble; and (b) as a result of the Restructuring, the Senior Creditor SPV will hold 70% of the shares in New Noble.[24]  Importantly, the Securities Industry Council in Singapore (the "<u>SIC</u>") made its approval of the Whitewash Waiver conditional upon Noble completing the Restructuring by November 27, 2018.[25]  The Board resolutions approving the proposed Restructuring and Whitewash Waiver therefore expire on November 27, 2018.  There is no guarantee that Noble will be able to again obtain such consensus from its shareholders, or extension from the SIC, once the

---

[21]    *See id.* ¶ 16, 19.

[22]    *See id.* ¶ 16.

[23]    *See id.*

[24]    *See id.* ¶ 17.

[25]    *See id.*

resolutions expire.[26]  Thus, November 27, 2018 effectively serves as the deadline by which the Restructuring transactions must be consummated.[27]

### III.    Proceedings that Are Not the Subject of this Petition.

13.    Noble is pursuing the separate Bermudan Scheme to ensure that the Restructuring is recognized in the jurisdiction where Noble is incorporated, to ensure that all Noble shareholders and creditors will be stayed from taking any adverse action under Bermudan law, such as a wind-up of the business of Noble and its affiliates, in contravention of the terms and conditions contemplated under the Restructuring.[28]  Noble has obtained an order from the Supreme Court of Bermuda (Commercial Court) (the "Bermudan Court"), pursuant to section 99 of the Companies Act 1981 of Bermuda (the "Bermudan Act") granting leave to convene meetings of the Scheme Creditors (the "Bermudan Scheme Meetings") to consider and approve the proposed Bermudan scheme of arrangement for Noble (*i.e.*, the Bermudan Scheme).[29]

14.    While the sanctioning of both the English Scheme and the Bermudan Scheme by the respective foreign courts are required conditions to the Restructuring, the English Scheme and the Bermudan Scheme are parallel and inter-conditional such that they reflect the same economic restructuring of the same outstanding obligations of Noble.[30]  As such, the Petitioner at this time is seeking recognition only of the English Proceedings.[31]  The Petitioner reserves its right to seek recognition of the Bermudan Scheme at a later date.

---

[26]    *See id.*

[27]    *See id.*

[28]    *See id.* ¶ 28.

[29]    *See id.*

[30]    *See id.* ¶ 29.

[31]    *See id.*

## IV.    Terms of the Proposed Restructuring.

15.    The Scheme Creditors whose claims are to be compromised are comprised of two

classes.  The first class comprises holders of the following financial indebtedness:

- the 3.625% Senior Notes due 2018 (the "2018 Notes"), which are governed by English law, issued by Noble, and constituted pursuant to the Existing 2018 Notes Trust Deed, and of which $379,000,000[32] in aggregate principal amount was outstanding as of September 21, 2018;

- the 6.75% senior notes due 2020 (the "2020 Notes"), which are governed by New York law, issued by Noble, and constituted pursuant to the Existing 2020 Notes Indenture, and of which $1,176,920,000 in aggregate principal amount was outstanding as of September 21, 2018;

- the 8.75% senior notes due 2022 (the "2022 Notes" and together with the 2018 Notes and the 2020 Notes, the "Existing Notes"), which are governed by English law, issued by Noble, and constituted pursuant to the Existing 2022 Notes Trust Deed, and of which $750,000,000 in aggregate principal amount is outstanding as of September 21, 2018; and

- the loans made to Noble (the "Existing RCF Loans" and together with the Existing Notes, the "Existing Senior Debt Instruments") under the $2,294,600,000 revolving credit facility agreement, governed under English law, dated May 18, 2015, between, among others, Noble as borrower, the Existing RCF Lenders, and Madison Pacific Trust Limited as agent and swingline agent, as amended pursuant to amendment letters dated August 2, 2017 and December 19, 2017, and as further supplemented, amended and restated from time to time.[33]

The first class also includes any persons whatsoever that hold any Claim other than a Claim in

respect of the Existing Senior Debt Instruments or an Excluded Claim

(the "Other Scheme Claims").

16.    The second class under the Schemes is composed of DB with respect to the DB

Excluded Claim and the DB Surplus Claim.[34]

---

[32]    All figures are in United States dollars.

[33]    *See* Brough Decl. ¶ 20.

[34]    *See id.* ¶ 21.

17.    On the effective date of the Restructuring, Noble's assets will be transferred to New Noble.  New Noble, in turn, will hold the Company's assets under two silos:  (i) the "Trading Co Group," which will operate the New Noble's core businesses, consisting of hard commodities, freight, and LNG businesses located primarily in the Asia-Pacific region, and (ii) the "Asset Co Group," which will hold New Noble's interests in Harbour Energy, Jamalco, Noble Plantations, and certain vessels.[35]  The Existing Senior Debt Instruments will terminate, and each Scheme Creditor (with the exception of DB with respect to the DB Excluded Claim) will be entitled to a combination of new debt to be issued by certain subsidiaries of New Noble and equity in New Noble (held via the Senior Creditor SPV) as follows:

- **Priority Debt Exchange**:  For each $1,000 of qualifying Scheme Claims held by a Participating Creditor (*i.e.*, a Scheme Creditor that agrees to risk participate in a new first lien trade finance facility (the "New Trade Finance Facility")), such Participating Creditor shall be entitled to $1,000 of Priority Debt.

- **Further Debt Exchange**:  Following the Priority Debt Exchange, each qualifying Scheme Creditor shall be entitled to an amount of New Trading Hold Co Bonds (*i.e.*, notes to be issued by a newly-created holding company within the Trading Co Group).

- **Debt for Equity Swap**:  Following the Further Debt Exchange, each qualifying Scheme Creditor shall be entitled to a *pro rata* share of stock in the Senior Creditor SPV, which, in turn, will own approximately 70 percent of the equity in New Noble.[36]

18.    With respect to the DB Excluded Claim, DB will be the sole recipient of certain priority bonds to be issued by the primary operating company within the Asset Co Group.  This different treatment of the DB Excluded Claim arises as a result of DB's continued trade finance support leading up to the Restructuring, without which Noble could not function.  ING, also a trade

---

[35]    *See id.* ¶ 18.

[36]    *See id.* ¶ 22; *see also* Ex. B, Part B, Clauses 9.10-9.14.  In addition to the transfer of new debt and equity, the Restructuring includes several additional steps, as further detailed in the Explanatory Statement.  *See* Ex. B, Part B, Clauses 9.15-9.22.

financier, will also receive certain priority bonds as part of the Restructuring pursuant to a separate agreement outside of the Schemes.[37]

19.     Approximately 88 percent of the holders of Existing Senior Debt Instruments have acceded to the RSA in support of the Restructuring.[38]  Importantly, entry of an order recognizing the English Proceedings and granting the relief requested herein is a condition precedent to consummation of the Restructuring.[39]

## V.     Initiation of the English Proceedings.

20.     By letter (the "Practice Statement Letter") dated September 21, 2018, Noble explained the objectives of the English Scheme and the Restructuring and notified its creditors that it intended to apply to the English Court for leave to convene the English Scheme Meetings.[40]  On October 9, 2018, Noble filed such application with the English Court under Part 26 of the Companies Act 2006 of England and Wales (the "Companies Act").[41]  At a two day hearing before the Honorable Justice Richard Snowden beginning on October, 12, 2018 (the "Convening Hearing"), the English Court considered the application[42] and, upon its conclusion, entered an order (the "Convening Order") in the English Proceedings granting leave to the Debtor to convene meetings of Noble's creditors (the "English Scheme Meetings") on November 8, 2018.[43]  The Debtor and the Petitioner thereafter commenced this chapter 15 case.

---

[37]   *See* Brough Decl. ¶ 23.

[38]   *See id.* ¶ 16.

[39]   *See id.* ¶ 17

[40]   *See id.* ¶ 26.

[41]   *See id.*  A copy of the English Scheme application submitted in the English Proceedings is attached hereto as **Exhibit D**.

[42]   *See* Brough Decl. ¶ 26.

[43]   *See id.*  A copy of the Convening Order is attached to the Form Petition as Exhibit 3.

21.    Following the English Scheme Meetings, and upon receiving the necessary votes in favor of the English Scheme, the English Court will conduct a hearing on November 12, 2018 to consider sanctioning the English Scheme (the "English Scheme Sanction Hearing").[44]  Through the *Application for an Order Scheduling a Hearing on Recognition of Foreign Main Proceeding and Specifying Form and Manner of Service of Notice*, filed concurrently herewith, the Petitioner is requesting that the relief requested herein to be heard a few days after the date of the English Scheme Sanction Hearing in order to coincide with the timing of the broader Restructuring.

22.    The English Scheme will become legally binding (the "Scheme Effective Date") only upon the following:

- a vote in favor of the English Scheme by a majority in number representing not less than 75 percent in value of each class of creditors, present and voting in person or by proxy, in each of the English Scheme Meetings;

- issuance by the English Court of the Sanction Order; and

- delivery of the Sanction Order to the Registrar of Companies in England and Wales ("Companies House") for registration.[45]

## VI.    Appointment of the Petitioner as Noble's Proposed Foreign Representative.

23.    On October 12, 2018, Noble's board of directors passed resolutions appointing the Petitioner to serve as its authorized foreign representative for the purpose of seeking chapter 15 recognition of the English Proceedings and authorizing the Petitioner to take actions in connection with this chapter 15 proceeding (the "Board Resolutions").[46]

---

[44]    *See* Brough Decl. ¶ 27.

[45]    *See* Ex. B, Part B, Clause 1.2.; *see also* Asimacopoulos Decl. ¶ 15.

[46]    *See* Brough Decl. ¶ 30.  A copy of the Board Resolutions is attached to the Form Petition as Exhibit 2, filed concurrently herewith.

**Basis for Relief**

24.     Chapter 15 of the Bankruptcy Code is designed to promote cooperation and comity between courts in the United States and foreign courts, to protect and maximize the value of a debtor's assets, and to facilitate the rehabilitation and reorganization of businesses.  The relief afforded to a foreign debtor under chapter 15 is intended to avoid disruptions that could otherwise derail a debtor's restructuring in its home country.

25.     Consistent with these principles, the Petitioner has commenced ancillary proceedings for the Debtor under chapter 15 of the Bankruptcy Code to obtain recognition of the English Proceedings and certain related relief, including enforcement of the English Scheme in the United States.  The Petitioner believes that this chapter 15 case will complement the Debtor's primary proceedings in England to ensure the effective and economic administration of the Restructuring and prevent adverse actions in the United States.

I.     **Noble is Eligible to be a "Debtor" under Chapter 15 of the Bankruptcy Code.**

26.     Noble is eligible to be a debtor in a chapter 15 case.  For the purposes of a case under chapter 15, a "debtor" means an entity that is the subject of a foreign proceeding. *See* 11 U.S.C. § 1502(1).  Here, Noble is an exempted company with limited liability incorporated under the laws of the Bermuda.[47]  *See* 11 U.S.C. §§ 101(15), (41).  As set forth below, the English Proceedings are foreign proceedings as that term is defined in the Bankruptcy Code.  Noble also does not fall within any of the categories of entities excluded from chapter 15 eligibility, as set forth in section 1501(c).  Accordingly, Noble is a debtor eligible for chapter 15 relief under the Bankruptcy Code.  *See* 11 U.S.C. § 1501(b), (c).

---

[47]     *See* Brough Decl. ¶ 2.

27.     Moreover, Noble is an eligible chapter 15 debtor under section 109(1) of the Bankruptcy Code.  Section 109(a) provides:  "Notwithstanding any other provision of this section, only a person that resides or has domicile, a place of business, or *property in the United States*, or a municipality, may be a debtor under this title."  11 U.S.C. § 109(a) (emphasis added).  Courts in this circuit have applied section 109(a) of the Bankruptcy Code to chapter 15 eligibility.  *See, e.g.*, *Drawbridge Special Opportunities Fund LP v. Barnett (In re Barnett)*, 737 F.3d 238, 247 (2d Cir. 2013) ("Section 103(a) makes all of Chapter 1 applicable to Chapter 15.  Section 109(a)—within Chapter 1—creates a requirement that must be met by any debtor").  Decisions interpreting section 109(a) of the Bankruptcy Code as applied to foreign debtors under other chapters of the Bankruptcy Code unanimously hold that a debtor satisfies the section 109 requirement even when it only has a nominal amount of property in the United States.  *See GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Partipacoes S.A. (In re Globo Comunicacoes e Partipacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y. 2004) (stating that courts have repeatedly found that there is "virtually no formal barrier" to having federal courts adjudicate foreign debtors' bankruptcy proceedings) (*citing In re Aerovias Nacionales de Colombia S.A. (In re Avianca)*, 303 B.R. 1, 9 (Bankr. S.D.N.Y. 2003)).  Effectively, if a debtor has any property in the United States, section 109(a) of the Bankruptcy Code is satisfied.  Relevant here, courts in this district have consistently recognized two forms of property as satisfying section 109(a) of the Bankruptcy Code:  (i) contracts, and (ii) bank accounts.

### A.     The Indenture for Noble's Unsecured Notes Independently Satisfy Section 109(a) of the Bankruptcy Code.

28.     Courts in this district have held that debt that is subject to a New York governing law provision and a New York forum selection provision constitute property in the United States sufficient to satisfy section 109(a) of the Bankruptcy Code.  Contracts create intangible property rights.  *See Berau*, 540 B.R. at 83 ("Contracts create property rights for the parties to the contract.

A debtor's contract rights are intangible property of the debtor.") (*citing U.S. Bank N.A. v. Am. Airlines, Inc.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013)). The situs of such intangible property rights is the location of the governing law. *See id.* at 84. Thus, any "debt subject to a New York governing law clause and a New York forum selection clause constitutes property in the United States." *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 699 (Bankr. S.D.N.Y. 2017) (*citing In re U.S. Steel Canada Inc.*, Case No. 571 B.R. 600, 609-11 (Bankr. S.D.N.Y. July 31, 2017)), *appeal dismissed*, 2018 WL 1725223 (S.D.N.Y. Apr. 6, 2018); *see also In re Avanti Commc'ns. Grp. Plc*, 582 B.R. 603, 613 (Bankr. S.D.N.Y. Apr. 9, 2018) (noting that bonds with an indenture governed by New York law satisfied the requirements under section 109(a) of the Bankruptcy Code); *In re Cell C Proprietary Ltd.*, 571 B.R. 542, 552 (Bankr. S.D.N.Y. 2017) (holding that the "Euro Notes which are governed by New York law and contain a New York forum selection clause" provided a sufficient basis for jurisdiction); *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) ("[D]ollar-denominated debt subject to New York governing law and a New York forum selection clause is independently sufficient to form the basis for jurisdiction."); *Berau*, 540 B.R. at 82 ("The Court concludes that the presence of the New York choice of law and forum selection clauses in the [indenture] satisfies the section 109(a) 'property in the United States' eligibility requirement.").

29.    Noble issued the Existing 2020 Notes pursuant to the Existing 2020 Notes Indenture, which is governed by New York law and contains a New York forum selection clause.[48] Thus, based on the foregoing, Noble is eligible to be a debtor under section 109(a) of the Bankruptcy Code.

---

[48]    *See id.* ¶ 32.

B.      **Noble's Bank Accounts Satisfy Section 109(a) of the Bankruptcy Code.**

30.    In addition to being eligible to be a debtor under section 109(a) of the Bankruptcy

Code because of the Existing 2020 Notes, Noble is also eligible to be a debtor because it also has

property in the United States in the form of bank accounts held at JPMorgan Chase & Co. in New

York, New York.[49]  *See In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. at 655 (finding

that a bank account alone was sufficient to meet the requirement under section 109); *In re Suntech

Power Holdings Co.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014) ("[The bank account] satisfied

the express requirements for eligibility under § 109(a) to permit the [debtors] to file the chapter

15."); *In re McTague*, 198 B.R. 428, 431–32 (Bankr. W.D.N.Y. 1996) (finding that $194 in a bank

account was alone sufficient to meet the requirement of section 109(a) of the Bankruptcy Code).

Accordingly, the Debtor's bank accounts provides a second independent basis for jurisdiction by

satisfying the requirements under section 109(a) of the Bankruptcy Code.

II.    **Recognition of the English Proceedings as a "Foreign Main Proceeding," or, in the
       Alternative, as a "Foreign Nonmain Proceeding," and of the Petitioner as its Foreign
       Representative is Appropriate.**

31.    Section 1517 of the Bankruptcy Code provides that, after notice and hearing, the

Court shall enter an order recognizing a foreign proceeding as a foreign main (or nonmain)

proceeding if (i) such foreign proceeding is a foreign main (or nonmain) proceeding within the

meaning of section 1502 of the Bankruptcy Code, (ii) the foreign representative applying for

recognition is a person or body, and (iii) the petition meets the requirements of section 1515 of the

Bankruptcy Code.  *See* 11 U.S.C. 1517(a).  As explained below, the English Proceedings, the

Petitioner, and this Chapter 15 Petition satisfy all of the foregoing requirements.

---

[49]    *See id.*

A.    **The English Proceedings are Foreign Proceedings.**

32.    As an initial matter, the English Proceedings fit the definition of a "foreign

proceeding" set forth in section 101(23) of the Bankruptcy Code.  *See* 11 U.S.C. § 101(23).

Section 101(23) of the Bankruptcy Code provides that a "foreign proceeding" means:

> a collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets and
> affairs of the debtor are subject to control or supervision by a foreign
> cour for the purpose of reorganization or liquidation.  *See id*; *see
> also In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y.
> 2012) (holding that the appointed representative of a foreign debtor
> carries the burden of evidencing that such proceeding is a foreign
> proceeding by proving the following seven criteria derived from the
> elements of section 101(23) of the Bankruptcy Code: "(i) [the
> existence of] a proceeding; (ii) that is either judicial or
> administrative; (iii) that is collective in nature; (iv) that is in a
> foreign country; (v) that is authorized or conducted under a law
> related to insolvency or the adjustment of debts; (vi) in which the
> debtor's assets and affairs are subject to the control or supervision
> of a foreign court; and (vii) which proceeding is for the purpose of
> reorganization or liquidation." (*citing In re Betcorp Ltd.*, 400 B.R.
> 266, 277 (Bankr. D. Nev. 2009)); *In re Oversight & Control
> Comm'n of Avánzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008)
> (discussing same factors).  The statute defines "foreign court" as "a
> judicial or other authority competent to control or supervise a
> foreign proceeding."  *See* 11 U.S.C. § 1502(3).

33.    Since Congress' enactment of chapter 15 of the Bankruptcy Code, courts in the

United States have recognized similar English schemes as "foreign proceedings" numerous times.

*See, e.g.*, *In re Avanti Commc'ns Grp. PLC*, Case No. 18-10458 (Bankr. S.D.N.Y. Apr. 9, 2018);

*In re hibu Inc.*, Case No. 14-70323 (Bankr. S.D.N.Y. Feb. 27, 2014); *In re Magyar Telecom B.V.*,

Case No. 13-13508 (Bankr. S.D.N.Y. Dec. 11, 2013); *In re Tokio Marine Europe Ins. Ltd.*,

Case No. 11-13420 (MG) (Bankr. S.D.N.Y. July 18, 2011); *In re Global Gen. and Reinsurance

Co. Ltd.*, Case No. 11-10327 (RDD) (Bankr. S.D.N.Y. Jan. 31, 2011).

34.    As further set forth in the Asimacopoulos Declaration, the facts here support a finding that the English Proceedings constitute a "foreign proceeding" for the purposes of section 101(23) of the Bankruptcy Code.

35.    *First*, the English Proceedings were commenced pursuant to Part 26 of the Companies Act, an English law that governs corporate reorganizations frequently used in a restructuring context.  For purposes of chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets." *Betcorp*, 400 B.R. at 278.  Because the English Proceedings operate under such statutory framework, they satisfy the first factor of section 101(23) of the Bankruptcy Code.

36.    *Second*, the English Proceedings are "judicial," as they have been commenced before the English Court and thereafter are subject to the supervision of such court. A reorganization proceeding is judicial in character whenever a "court exercises its supervisory powers." *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010).  On October 16, 2018, the English Court entered the Convening Order,[50] and the English Scheme must be later sanctioned by the English Court for it to be effective.[51]  The English Court is a judicial body of England, which under the English Scheme will have exclusive jurisdiction to hear and determine any suit, action, or proceeding and to settle any dispute arising out of any provision of the English Scheme.[52]  Thus, the English Court has a supervisory role in the English Proceedings.

37.    *Third*, the English Proceedings are "collective" in nature in that they affect the claims of all Scheme Creditors and convene the English Scheme Meetings at which all Scheme Creditors present, either in person or by proxy, may vote on the English Scheme.  In *Betcorp*, for

---

[50]    *See* Brough Decl. ¶ 26; Form Petition, Ex. 3.

[51]    *See* Asimacopoulos Decl. ¶ 22.

[52]    *See* Ex. B, Part F, Clause 18.1.

instance, the bankruptcy court discussed the contrasts between a true collective proceeding, where such proceeding "considers the rights and obligations of all creditors" and a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *See* 400 B.R. at 281; *see also In re Poymanov*, 571 B.R. 24, 33 (Bankr. S.D.N.Y. 2017) ("A proceeding is collective if it considers the rights and obligations of all of a debtor's creditors, rather than a single creditor.").  Here, the English Court will consider sanctioning the English Scheme only if it is approved by a majority in number of Scheme Creditors voting in each class representing at least 75 percent in value of the Scheme Claims present and voting at the English Scheme Meetings.  *See* Companies Act 2006 § 899.  The English Scheme is intended to benefit creditors according to their interests collectively, rather than to benefit any single creditor alone.  *See Betcorp*, 400 B.R. at 281 (a proceeding is collective where such proceeding "considers the rights and obligations of all creditors" in contrast to a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor").  Accordingly, the English Proceedings are collective in nature because they consider the rights and obligations of all of the Debtor's creditors rather than a single creditor.

38.    ***Fourth***, the English Proceedings are being conducted in a foreign country, that is, the English Court is located in London, England.[53]

39.    ***Fifth***, as described above, a "foreign proceeding" is "a law relating to insolvency or adjustment of debt."  Notably, the definition of "foreign proceeding" in the Bankruptcy Code includes the words "or adjustment of debt."  *See In re Millard*, 501 B.R. 644, 649–50 (Bankr. S.D.N.Y. 2013) ("Likewise, *Collier* explains that "[t]he words 'under a law relating to insolvency or adjustment of debt' [in section 101(23)] emphasize that chapter 15 is available not

---

[53]    *See* Brough Decl. ¶ 26.

only to debtors that are technically insolvent or facing liquidation, but also to debtors who are in financial distress and may need to reorganize.") (*citing* 8 Collier ¶ 1501.03 (16th 2018))). Moreover, the phrase "relating to" is interpreted broadly. *See, e.g.*, *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) ("ordinary meaning of . . . words ['relating to'] is a broad one") (citation omitted); *California Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring) ("[A]pplying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else."). Here, there is little doubt that the English Proceedings— conducted under Part 26 of the Companies Act—relate to the adjustment of debt, and are proceedings for the benefit of a company that is insolvent or in severe financial distress.

40.    **Sixth,** Noble's assets and affairs are subject to the control or supervision of the English Court through the English Proceedings.  As discussed above, the English Proceedings have been commenced before the English Court.[54]  Ultimately, the alteration of the Debtor's business and liabilities are subject to the English Court approving the English Scheme and entering the Sanction Order.  Thus, the English Court has control over the Debtor's assets and affairs through the English Proceedings.

41.    **Finally**, the objective of the English Proceedings is to further the ultimate reorganization of Noble.  The terms of the English Scheme proposed to the English Court will govern the global financial restructuring of Noble's indebtedness.  As a consequence, the English Proceedings were commenced by the Debtor for the purpose of reorganization, as required by section 101(23) of the Bankruptcy Code.[55]

---

[54]    *See id.*; Form Petition, Ex. 3.

[55]    See Brough Decl. ¶ 34.

42.     Accordingly, as all of the criteria required by section 101(23) are satisfied, this Court should find that the English Proceedings constitute "foreign proceedings" as required by section 1517 of the Bankruptcy Code.

**B.      The English Proceedings are Foreign Main Proceedings.**

43.     The English Proceedings are "foreign main proceedings" as defined by section 1502(4) of the Bankruptcy Code.  A "foreign main proceeding" is "a foreign proceeding pending in a country where the debtor has the center of its main interests[.]"  *See* 11 U.S.C. § 1502(4); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding will be entered if the foreign proceeding "is pending in the country where the debtor has the center of its main interests").

44.     "In the absence of evidence to the contrary, the debtor's registered office ... is presumed to be the [center of main interests]."  11 U.S.C. § 1516(c).  Pursuant to section 1516(c) of the Bankruptcy Code, however, the center of main interests ("COMI") presumption may be rebutted.  The legislative history makes clear that "[t]he ultimate burden as to each element [of recognition] is on the foreign representative, although the court is entitled to shift the burden to the extent indicated in section 1516."   H.R. Rep. 109–31, pt. 1, 109th Cong. 1st Sess. at 112-113 (2005).  Courts have identified various factors that are relevant in identifying a debtor's COMI, none of which on their own are determinative, including:  (a) the location of the debtor's headquarters; (b) the location of those persons or entities that actually manage the debtor (which, in certain instances, could be the headquarters of a holding company); (c) the location of the debtor's primary assets; and (d) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case.  *See In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006).  When analyzing the factors for determining a debtor's COMI, the Second Circuit has held that COMI should be determined based on the debtor's activities "at or

around the time the Chapter 15 petition is filed." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137

(2d Cir. 2013).

45.    Here, the Debtor's COMI is in London, England.[56]   As set forth in the Brough

Declaration:

a.    the Debtor's corporate office is located at 33 Cavendish Square in London and is registered as a foreign establishment pursuant to the Overseas Companies Regulations 2009;

b.    several of the Debtor's officers are based at the London office where they approve key vendor payments, maintain the Debtor's consolidated cash management system, and exercise the Debtor's treasury functions, including management of bank accounts, cash payments, receipts, and bank lines;

c.    the Debtor has several bank accounts in England, which it uses for a number of purposes including the payment of third party fees and to fund its subsidiaries;

d.    the majority of meetings of the Debtor's board of directors (the "Board") are chaired by the Debtor's executive chairman from the London office; other directors join those Board meetings in person or by conference call;

e.    meetings of the Board's audit subcommittee, the risk subcommittee, and the corporate governance subcommittee are held in London;

f.    London has been the primary location where negotiations between the Debtor and its creditors and their advisors in relation to the Restructuring have taken place, both prior to and in the period since the execution of the RSA;

g.    the Existing Notes Documents (other than the Existing 2020 Notes Indenture which is governed by New York law) are governed by English law;

h.    the Existing RCF Agreement is governed by English law;

i.    the RSA is governed by English law; and

---

[56]   For the avoidance of doubt, the Petitioner is seeking relief for only Noble, whose corporate office is located in London, England, and registered office in Bermuda.  Noble Group, as a corporate enterprise, has substantial operations in Hong Kong and Singapore; however, those operations and the subsidiaries that manage them are not debtors in this chapter 15 case.

j.      a number of the Notes Scheme Creditors and RCF Scheme Creditors are subject to the personal jurisdiction of the English Court by virtue of having their corporate office or principal place of business in England.[57]

46.     Though the Debtor's registered office is located in Bermuda, the Debtor engages in no activities or operations there. Based on the above factors, all of which are in effect on the date hereof, the Debtor's COMI is located in England and, as such, the English Proceedings should be recognized as foreign main proceedings.

### C.      In the Alternative, the English Proceedings are Foreign Nonmain Proceedings.

47.     In the alternative, if this Court concludes that the English Proceedings are not "foreign main proceedings," the English Proceedings should be recognized as "foreign nonmain proceedings" under section 1502(5) of the Bankruptcy Code.

48.     A "foreign nonmain proceeding," is defined as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." *See* 11 U.S.C. § 1502(5); *see also* 11 U.S.C. § 1517(b)(2) (providing that an order of recognition as a "foreign nonmain proceeding" shall be entered "if the debtor has an establishment within the meaning of section 1502 in the foreign country where the proceeding is pending"). An establishment is "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). "Nontransitory economic activity" is not defined in the Bankruptcy Code, but has been referred to as 'a local place of business.'" *See In re Creative Fin. Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y 2016) (holding that in order to have an establishment in a country a debtor must "conduct business in that country."); *see also In Re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y 2007) (holding that the requirements of a "place of operations" from which "economic activity" is

---

[57] *See* Brough Decl. ¶ 36.

conducted require a seat for local business activity that has a local effect on the markets); *In Re British Am. Ins. Co.*, 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010) (holding same); *Lavie v. Ran*, 607 F.3d 1017, 1027 (5th Cir. 2010) (holding that the definition of establishment requires "a place from which economic activities are exercised on the market (i.e. externally), whether the said activities are commercial, industrial or professional."). As with determining a debtor's COMI, the determination of whether a debtor has an establishment in a country is determined as of the time of the filing of the chapter 15 petition. *See Lavie v. Ran (In re Ran)*, 406 B.R. 277, 284-85 (S.D. Tex. 2009).

49. As described above, Noble maintains its corporate office in London where officers execute treasury functions and approve key vendor payments. Further, most board meetings are chaired and convened at the London office. Since the beginning of the second quarter of 2018, London is also where Noble has managed the Restructuring.[58] Given the material and substantive activities conducted by Noble in London, and Noble's corporate office being located in London, Noble clearly has a local and non-transitory place of business, and hence, an establishment, in England.

## III.    The Chapter 15 Case Has Been Commenced by the Petitioner as a Qualifying Foreign Representative.

50. The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the foreign representative applying for recognition be a "person or body." *See* 11 U.S.C. § 1517(a)(2). The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the

---

[58]   *See id.*

> reorganization or the liquidation of the debtor's assets or affairs or
> to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

51.    The board of directors for the Debtor previously met and appointed by resolution the Proposed Foreign Representative for purposes of this chapter 15 case.[59]  Bankruptcy courts have held that a governing body of an entity may authorize a person to act as that entity's foreign representative in a chapter 15 proceeding.  *See In re Cell C Proprietary Ltd.*, 571 B.R. 542, 553 (Bankr. S.D.N.Y. 2017) (recognizing that "section 101(24) does not require that a foreign representative be judicially appointed" and "that a board of directors may authorize a person to act as the corporation's foreign representative in a chapter 15 proceeding"); *see also In re Vitro, S.A.B. de C.V.*, 470 B.R. 408, 412 (N.D. Tex. 2012), *aff'd sub nom.*, *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1047 (5th Cir. 2012), *cert. dismissed*, 133 S. Ct. 1862 (2013) (recognizing that the board of directors of a corporation could authorize a person to act as the corporation's foreign representative in a chapter 15 proceeding); *In re OAS S.A.*, 533 B.R. 83, 98 (Bankr. S.D.N.Y. 2015) (holding that individual appointed by board qualified as a "foreign representative"); *In re Compania Mexicana de Aviacion, S.A. de C.V.*, No. 10-14182 (MG), 2010 WL 10063842 at *2 (Bankr. S.D.N.Y. Nov. 8, 2010) (same).  Moreover, the Proposed Foreign Representative is a "person" under section 101(41) of the Bankruptcy Code.  Thus, the Proposed Foreign Representative has met the requirements of section 101(24) of the Bankruptcy Code and is the Debtor's "foreign representative" as defined therein.

---

[59]    *See id.* ¶ 30.

**IV.    The Chapter 15 Petition Meets the Requirements of Section 1515 of the Bankruptcy Code.**

52.    Pursuant to section 1515(b) of the Bankruptcy Code, a petition for recognition must be accompanied by one of the following:

a.    a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

b.    a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

c.    in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

53.    In satisfaction of section 1515(b) of the Bankruptcy Code, attached as <u>Exhibit 2</u> and <u>Exhibit 3</u> to the Form Petition, respectively, and incorporated herein by reference, are true and correct copies of the following documents evidencing the English Proceedings and the appointment of the Proposed Foreign Representative:  (a) the Convening Order and (b) the Board resolutions appointing the Proposed Foreign Representative.[60]   Therefore, the Chapter 15 Petition meets the requirements of section 1515 of the Bankruptcy Code in satisfaction of the third requirement under section 1517(a) of the Bankruptcy Code.

54.    Moreover, granting recognition will promote the United States public policy of respecting foreign proceedings as articulated in, *inter alia*, sections 1501(a) and 1508 of the Bankruptcy Code and further cooperation between courts to the maximum extent possible as mandated by section 1525(a) of the Bankruptcy Code.  Thus, these circumstances satisfy the conditions for mandatory recognition of the English Proceedings under section 1517 of the Bankruptcy Code.

---

[60]    The Debtor reserves the right to supplement these materials in advance of or at the final hearing on the Verified Petition.

55.    For all of the reasons set forth above, the Petitioner respectfully submits that all of the requirements set forth in section 1517(a) have been satisfied and, thus, the entry of the Order by the Court recognizing the English Proceedings as "foreign main proceedings," or in the alternative, as "foreign nonmain proceedings," is proper.

**V.    Upon the Recognition of the English Proceedings as either "Foreign Main Proceedings" or "Foreign Nonmain Proceedings," the Automatic Stay Applies.**

56.    Upon the recognition of a foreign proceeding as a "foreign main proceeding" or a "foreign nonmain proceeding," a foreign representative is automatically entitled to the benefit of the relief conferred under section 1520(a) of the Bankruptcy Code, including, without limitation, the automatic stay imposed pursuant to section 362 of the Bankruptcy Code. *See* 11 U.S.C. § 1520(a)(1) ("Upon the recognition of a foreign proceeding that is a foreign main proceeding— (1) sections 361 and 362 of the Bankruptcy Code apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States").

57.    Consequently, upon the recognition by this Court of the English Proceedings as "foreign main proceedings" or, in the alternative, "foreign nonmain proceedings," the ancillary recognition of the automatic stay provided under section 362(a) of the Bankruptcy Code in respect of all actions and proceedings against Noble and its property in the United States is appropriate pursuant to section 1520(a) of the Bankruptcy Code.  *See In re Spansion, Inc.*, 418 B.R. 84, 90 (Bankr. D. Del. 2009) (upon recognition of a foreign proceeding, the stay automatically comes into effect), *rev'd on other grounds*, 2009 Bankr. LEXIS 3308 (Bankr. D. Del. Oct. 15, 2009). Given that the protections set forth in section 1520(a) of the Bankruptcy Code flow automatically from the recognition of a "foreign main proceeding" or "foreign nonmain proceeding" under section 1517 of the Bankruptcy Code, in the event that the Court recognizes the English Proceedings as "foreign main proceedings" or "foreign nonmain proceedings," the Petitioner respectfully submits that no further showing is required.

**VI.    Certain Additional Relief Upon Recognition is Both Necessary and Appropriate to Effect the English Proceedings and Should be Granted.**

58.    In addition to recognition of the English Proceedings as foreign main proceedings, the Debtor seeks enforcement and recognition of the English Scheme following the conclusion of the English Scheme Sanction Hearing, at which point the Sanction Order authorizing the English Scheme will have been entered.  As described above, the English Scheme provides the resolution of claims held by the Scheme Creditors and facilitates the financial restructuring of Noble.  As part of this restructuring, the Scheme contemplates providing releases to those parties (the "Released Parties") essential to the execution of the RSA and the Restructuring.[61]

59.    Upon recognition of a foreign proceeding, sections 1521 and 1507 of the Bankruptcy Code provide specific bases for additional relief.[62]  Section 1521 authorizes the Court to grant "any appropriate relief," including "any additional relief that may be available to a trustee" subject to certain limitations and provided that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. §§ 1521, 1522.  A court may also act pursuant to section 1507 to provide "additional assistance" to a foreign representative under the Bankruptcy Code or other U.S. law beyond that permitted under section 1521, provided that such assistance is "consistent with the principles of comity."[63]  *See* 11 U.S.C. § 1507.

---

[61]    *See* Ex. B, Part F, Clause 12.2; see also Ex. B, Appx. 11.

[62]    In *In re Vitro*, the Fifth Circuit Court of Appeals considered the relationship between sections 1521 and 1507 of the Bankruptcy Code and established an analytical framework for considering requests for relief under chapter 15. *In re Vitro*, 701 F.3d at 1056.  Under the *Vitro* analysis, a court should initially consider whether the requested relief falls under one of the explicit provisions of section 1521.  *Id.*  If it does not, then the court should consider whether the requested relief constitutes "appropriate relief" under section 1521(a)(7), which the Fifth Circuit held to be coextensive with relief provided under former section 304 of the Bankruptcy Code, the precursor to chapter 15, or otherwise available in the U.S.  *See id.* at 1056-57.  Finally, if the requested relief goes beyond the relief previously available under section 304 or currently available under U.S. law, then a court should consider section 1507, which allows for relief "more extraordinary" than that provided under section 1521.  *Id.* at 1057.  The relief requested herein is appropriate under sections 1521 and 1507 and should be granted.

[63]    In determining whether to provide additional assistance, section 1507 directs a court to consider whether such additional assistance, consistent with the principles of comity, will reasonably assure —

    (1)  just treatment of all holders of claims against or interests in the debtor's property;

60.    U.S. federal courts generally extend comity showing deference to a foreign court's judgment and relief therein when the foreign court has proper jurisdiction, the foreign court provides for a full and fair process, and enforcement does not contravene the laws or public policy of the United States.  *See, e.g.*, *Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895) (holding that if the foreign forum provides a full and fair trial before a court of competent jurisdiction, conducting the trial upon regular proceedings and under a system of jurisprudence likely to secure an impartial administration of justice, and there is nothing to show prejudice in the court or in the system of laws under which it is sitting, the judgment should be enforced and not "tried afresh"); *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 238 B.R. 25, 56–61 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002) (barring objections not raised before the foreign insolvency court and stating, "[a]s long as the manner in which the scheme acquired statutory effect comports with our notions of procedural fairness, comity should be extended to it.") (citations omitted); *In re Gee*, 53 B.R. 891, 902, 904 (Bankr. S.D.N.Y. 1985) (stating that "[f]or comity to be extended, it is necessary only that the foreign court abide by fundamental standards of procedural fairness" and noting that the ancillary court, if satisfied with the procedural fairness of the foreign proceeding, "should not sit as an appellate court over the foreign proceedings").

61.    Thus, when an issue "ha[s] been fully and fairly litigated" in the courts of the respective jurisdictions, enforcing the foreign court's order is consistent with principles of comity under section 1507, regardless if the same result would not be reached in a plenary chapter 11 case

---

(2)  protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3)  prevention of preferential or fraudulent dispositions of property of the debtor;

(4)  distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and

(5)  if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

*See* 11 U.S.C. § 1507(b).

before the same court.  *See In re Sino-Forest Corp.*, 501 B.R. 655, 665 (Bankr. S.D.N.Y. 2013);

*In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 698 (Bankr. S.D.N.Y. 2010).

62.     Such exercise of comity has commonly led courts to find that recognizing and

enforcing a foreign scheme of arrangement is appropriate under sections 1521 and 1507 of the

Bankruptcy Code.  *See, e.g.*, *In re Avanti*, 582 B.R. at 616 ("Cases have held that in the exercise

of comity that appropriate relief under section 1521 or additional assistance under section 1507

may include recognizing and enforcing a foreign plan confirmation order.").  Further, a court may

recognize and enforce a release of guarantees in connection with its recognition of the petitioning

debtor's foreign proceedings, even if the release benefits the debtor's non-debtor affiliates.

*See, e.g.*, *Avanti*, 582 B.R. at 618–19; *Ocean Rig*, 570 B.R. at 687 (recognizing and enforcing

scheme of arrangement that released affiliate guarantees); *In re Sino-Forest Corp.*,

501 B.R. 655, 665 (Bankr. S.D.N.Y. 2013) (enforcing foreign order containing third-party

releases).

63.     In *Avanti*, the court granted recognition of the debtor's proceedings in England as

foreign main proceedings.  The *Avanti* debtor also sought enforcement of releases given in favor

of certain of the debtor's non-debtor subsidiaries.  The court ultimately held that it could, and

would, enforce the guarantee discharge, noting that enforcement was consistent with the principles

of comity.  The court also stated that the "failure of a United States bankruptcy court to enforce

the [third-party releases] could result in prejudicial treatment of creditors to the detriment of the

[*Avanti* debtor's] reorganization efforts and prevent the fair and efficient administration [of the

overall restructuring]."  *Avanti*, 582 B.R. at 619.

64.     Here, the Schemes are the result of hard-fought, arm's-length negotiations between

all parties to the RSA.  The Company's creditors will have a full and fair opportunity to be heard

in the English Proceedings in a manner consistent with U.S. due process standards.

Under principles of comity, this Court should recognize and enforce the English Scheme—*in toto*—in connection with its recognition of the English Proceedings. The granting of such relief is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code, and is necessary to give effect to the English Proceedings and English Scheme. If granted, such relief would promote the legislatively enumerated objectives of section 1501(a) of the Bankruptcy Code.

65.    Accordingly, recognizing and enforcing the English Scheme *in toto* is appropriate relief pursuant to sections 1521 or 1507 of the Bankruptcy Code.

## VII. Recognition of the English Proceedings Would Not be Manifestly Contrary to United States Public Policy.

66.    A court may deny a request for any chapter 15 relief that would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. Courts that have addressed the "public policy exception" in section 1506 of the Bankruptcy Code have noted that the exception is narrow, its application restricted to the most fundamental policies of the U.S., and a foreign judgment should generally be accorded comity if the foreign jurisdiction's proceedings meet fundamental standards of fairness. *See Oilsands Quest Inc.*, 484 B.R. 593, 597 (Bankr. S.D.N.Y. 2012); *see also In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (holding that a U.S. bankruptcy court is not required to make an independent determination about the propriety of the acts of a foreign court, but only whether their procedures meet U.S. standards of fundamental fairness). Further, the relief granted in a foreign proceeding and the relief available in a U.S. proceeding need not be identical. Courts have even gone so far as to hold that even the absence of a jury trial right—a right embodied in the U.S. Constitution—in a foreign proceeding would not justify the court's refusal to recognize the foreign

proceeding pursuant to the public policy exception. *See In re Ephedra Products Liab. Litig.*, 349 B.R. 333, 335–36 (Bankr. S.D.N.Y. 2006).

67.     Here, recognition of the English Proceedings, and any orders issued by the English Court during the pendency of the English Proceedings, would not be "manifestly contrary to the public policy of the United States" so as to justify refusal to recognize the English Proceedings and enforce the English Court's order,. Further, enforcement of the releases contemplated under the English Scheme would not be "manifestly contrary to the public policy of the United States" so as to justify refusal to recognize the English Proceedings and enforce the English Court's orders.

68.     Non-consensual third-party releases are not categorically prohibited in the Second Circuit. *In re Sino-Forest Corp.*, 501 B.R. at 665 (noting that in the Second Circuit "where the third-party releases are not categorically prohibited, it cannot be argued that the issuance of such releases is manifestly contrary to public policy"). In fact, this Court recently held that "schemes of arrangements sanctioned under English law that provide third-party non-debtor guarantor releases should be recognized and enforced under chapter 15 of the Bankruptcy Code." *See In re Avanti*, 582 B.R. at 618. Since enactment of chapter 15 of the Bankruptcy Code, courts in the Second Circuit have recognized and given effect to similar agreements granting non-consensual third-party releases. *Id*;*In re Metcalfe*, 421 B.R. 685; *Sino-Forest*, 501 B.R. 655. As such, recognition of the English Scheme and enforcement of the releases of the Released Parties contained therein is not manifestly contrary to U.S. public policy.

## Notice

69.     Notice of this Verified Petition will be provided to: (i) the Debtor; (ii) the Office of the U.S. Trustee for the Southern District of New York; (iii) the United States Attorney for the Southern District of New York; (iv) the following parties, or their counsel, if known: (a) the agent for the Existing RCF Loans; (b) the holders of the Existing Notes; (c) the trustees under the

respective indenture or trust deeds to the Existing Notes; (d) potential holders of Other Scheme Claims of whom the Debtor is aware; (e) the Ad Hoc Group; (v) all persons or bodies authorized to administer the English Proceedings; (vi) all parties required to be given notice under Bankruptcy Rule 2002(q)(l) of which the Debtor is aware; (vii) the Information Agent; and (viii) such other parties in interest that have requested notice pursuant to Bankruptcy Rule 2002.  The Petitioner submits that, in light of the nature of the relief requested, no other or further notice is required.

## No Prior Request

70.     No prior request for the relief sought in this motion has been made to this or any other court.

## Satisfaction of Local Rule Bankruptcy Rule 9013-1(a)

71.     The Verified Petition includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to the Chapter 15 Petition.  Accordingly, the Petitioner submits that the Verified Petition satisfies Rule 9013-l(a) of the Local Bankruptcy Rules for the Southern District of New York.

## Conclusion

72.     For the reasons set forth herein, the Petitioner respectfully submits that the Chapter 15 Petition satisfies the requirements for the recognition of the English Proceedings, and the Petitioner respectfully requests that this Court enter an order substantially in the form attached to the Verified Petition as **Exhibit A**, (i) recognizing the English Proceedings (a) as a "foreign main proceeding" or, in the alternative, (b) as a "foreign nonmain proceeding"; (ii) affirming the appointment of the Petitioner as the foreign representative; (iii) recognizing the application of the automatic stay provided in section 362(a) of the Bankruptcy Code pursuant to section 1520(a) of the Bankruptcy Code; and (iv) granting such other relief as may be just and proper.

Dated:  October 17, 2018          */s/ Marc Kieselstein, P.C.*
New York, New York                James H.M. Sprayregen, P.C.
                                  Marc Kieselstein, P.C.
                                  **KIRKLAND & ELLIS LLP**
                                  **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                  601 Lexington Avenue
                                  New York, New York 10022
                                  Telephone:    (212) 446-4800
                                  Facsimile:    (212) 446-4900

                                  - and -

                                  Adam C. Paul, P.C. (*pro hac vice* admission pending)
                                  Catherine Jun (*pro hac vice* admission pending)
                                  Gerardo Mijares-Shafai (*pro hac vice* admission pending)
                                  **KIRKLAND & ELLIS LLP**
                                  **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                  300 North LaSalle Street
                                  Chicago, Illinois 60654
                                  Telephone:    (312) 862-2000
                                  Facsimile:    (312) 862-2200

                                  *Counsel to the Foreign Representative*

## VERIFICATION OF PETITION

I, Paul J. Brough, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am the Executive Chairman of the Board and the authorized foreign representative for the Debtor.  As such, I have full authority to verify the foregoing Verified Petition on behalf of the Debtor.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  October 17, 2018

By:  Paul J. Brough
Title:  Executive Chairman
Noble Group Limited

**Exhibit A**

**Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 15 |
| | § | |
| NOBLE GROUP LIMITED, | § | Case No. 18-[_____] (___) |
| | § | |
| Debtor in a Foreign Proceeding.[1] | § | |
| | § | |

**ORDER GRANTING VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN
MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE,
AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Upon consideration of the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (together with the Form Petition[2] filed concurrently therewith, the "Chapter 15 Petition"), filed by the Petitioner as the "foreign representative" (the "Foreign Representative") of the above-captioned debtor (the "Debtor"); and upon the hearing on the Chapter 15 Petition and this Court's review and consideration of the Chapter 15 Petition, the Brough Declaration, and the Asimacopoulos Declaration; IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1]    The last four digits of Noble Group Limited's overseas company number are 5268.  The mailing address of Noble Group Limited's corporate office is Noble Group Limited, 11th floor, 33 Cavendish Square, Marylebone, London W1G 0PW United Kingdom.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition.

[3]    The findings and conclusions set forth herein and in the record of the hearing on the Chapter 15 Petition constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

B.      Venue is proper before this Court pursuant to 28 U.S.C. § 1410.  This Court may enter a final order consistent with Article III of the United States Constitution.

C.      Good, sufficient, appropriate, and timely notice of the filing of, and the hearing on, the Chapter 15 Petition was given, which notice was deemed adequate for all purposes, and no further notice need be given.

D.      No objections or other responses were filed that have not been overruled, withdrawn, or otherwise resolved.

E.      This chapter 15 case was properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

F.      The Foreign Representative is a "person" pursuant to section 101(41) of the Bankruptcy Code and is the duly appointed "foreign representative" of the Debtor as such term is defined in section 101(24) of the Bankruptcy Code with respect to the English Proceedings.  The Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

G.      The English Proceedings are entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

H.      The English Proceedings are pending in England, where the Debtor has its "center of its main interests" as referred to in section 1517(b)(1) of the Bankruptcy Code.  Accordingly, the English Proceedings are "foreign main proceedings" pursuant to section 1502(4) of the Bankruptcy Code, and are entitled to recognition as foreign main proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code.

I.      The terms of the English Scheme are not contrary to the public policy of the United States.

J.      The relief granted hereby is necessary to effectuate the purposes and objectives of chapter 15 and to protect the Debtor and its interests.

BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Chapter 15 Petition and requested relief therein is granted.

2.      The English Proceedings are recognized as foreign main proceedings pursuant to section 1517(a) and (b) of the Bankruptcy Code, and all the effects of recognition as set forth in section 1520 of the Bankruptcy Code shall apply.

3.      The English Scheme is recognized, enforced, and given full force and effect within the territorial jurisdiction of the United States in accordance with its terms.  Such recognition shall extend to, without limitation, the waiver, release, and discharge of any and all rights or claims against Noble, the Noble Group, and the Released Parties in accordance with the terms set forth in Part F, Clause 12 of the Explanatory Statement and to the maximum extent enforceable under English law.  Holders of such claims released thereby shall be precluded from asserting such claims within the territorial jurisdiction of the United States.

4.      Upon entry of this order, the English Proceedings and all prior orders of the English Court shall be and hereby are granted comity and given full force and effect in the United States and, pursuant to section 1520 of the Bankruptcy Code, among other things:

a.      the protections of sections 361 and 362 of the Bankruptcy Code apply to the Debtor;

b.      all persons and entities are enjoined from seizing, attaching, and enforcing or executing liens or judgments against the Debtor's property in the United States or from transferring, encumbering, or otherwise disposing of or interfering with the Debtor's assets or agreements in the United States without the express consent of the Foreign Representative; and

c.      all persons and entities are enjoined from commencing or continuing, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the

Debtor or its assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative, or other judgment, assessment, order, lien, or arbitration award against the Debtor or its assets or proceeds thereof.

5.      The Foreign Representative and the Debtor shall be entitled to the full protections and rights enumerated under sections 1521(a)(4) and (5) of the Bankruptcy Code and, accordingly, the Foreign Representative:

      a.      is entrusted with the administration or realization of all or part of the Debtor's assets located in the United States; and

      b.      has the right and power to examine witnesses, take evidence, or deliver information concerning the Debtor's assets, affairs, rights, obligations, or liabilities.

6.      The Foreign Representative is hereby established as the representative of the Debtor with full authority to administer the Debtor's assets and affairs in the United States, including, without limitation, making payments on account of the Debtor's prepetition and postpetition obligations.

7.      The Foreign Representative, the Debtor, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or Local Rules of this Court.

8.      No action taken by the Foreign Representative, the Debtor, or their respective successors, agents, representatives, advisors, or counsel in preparing, filing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the English Proceedings, this order, this chapter 15 case, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Foreign Representative, including, without limitation, pursuant to section 1510 of the Bankruptcy Code.

9.      This order is without prejudice to the Foreign Representative requesting any additional relief in this chapter 15 case, including seeking recognition and enforcement in the United States of any further orders issued by the English Court, including any final order

sanctioning the English Scheme, as such order may be amended or supplemented from time to time.

10.    The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this order.

11.    The terms and conditions of this order shall be immediately effective and enforceable upon its entry.

12.    This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this order, any requests for additional relief or any adversary proceeding brought in and through this chapter 15 case, and any request by an entity for relief from the provisions of this order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

13.    This order applies to all parties in interest in this chapter 15 case and all of their agents, employees, and representatives, and all those who act in concert with them who receive notice of this order.


New York, New York
Dated: _____, 2018                         _____
                                                                              UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Explanatory Statement**[1]

---

[1] The Debtor has not included this document in the Verified Petition because the final version has yet to be filed with the English Court or made public.  Upon the Debtor's filing and public issuance of the Explanatory Statement, the Foreign Representative will file the Explanatory Statement with the Court within a reasonable time.

## **Exhibit C**

**Corporate Organizational Chart**

**Noble Group Organisational Chart (key subsidiaries)**

**(Remarks: The chart only shows key Noble subsidiaries with 50% or above)**



## **Exhibit D**

**Scheme Application**



## Claim Form
## (CPR Part 8)

| In the | HIGH COURT OF JUSTICE, BUSINESS AND PROPERTY COURTS OF E&W |
|---|---|
| Claim no. | 08 Oct 2018 |
| Fee Account no. | |
| Help with Fees - Ref no. (if applicable) | H W F – – |

CR-2018-008453

**Claimant**

Noble Group Limited
11th Floor
33 Cavendish Square
London
W1G 0PW

( SEAL )

**Defendant(s)**

Not Applicable

Does your claim include any issues under the Human Rights Act 1998?  ☐ Yes  ☑ No

Details of claim *(see also overleaf)*

IN THE MATTER OF NOBLE GROUP LIMITED (the "Company")

AND IN THE MATTER OF THE COMPANIES ACT 2006

The Company seeks:

1. Directions as to the convening and conduct of meetings in London of certain of the Company's creditors for the purposes of considering and if thought fit, approving a scheme of arrangement under Part 26 of the Companies Act 2006 between it such creditors (the "Scheme Creditors") (the "Scheme") and further and other relief as more particularly described in the draft convening order attached hereto;

2. A direction that Patrick Cowley may be appointed chairman of the meetings and that the Company be directed to file with this Court a copy of a report by the chairman of the meetings;

| Defendant's name and address | | £ |
|---|---|---|
| | Court fee | 280.00 |
| | Legal representative's costs | To be assessed |
| | Issue date | 8 OCTOBER 2018 |

For further details of the courts www.gov.uk/find-court-tribunal.
When corresponding with the Court, please address forms or letters to the Manager and always quote the claim number.

**N208** Claim form (CPR Part 8) (06.16)        Reproduced by Thomson Reuters (Professional) UK Ltd.        © Crown copyright 2016

| Claim no. | |
|---|---|

## Details of claim *(continued)*

3.   A direction that, subject to approval by the requisite majority of the Scheme Creditors at the meetings, there may be a further hearing (the "Sanction Hearing") and an order may be made sanctioning the Scheme;

4.   Directions for the listing of the Sanction Hearing;

5.   Such further or other relief as the Court sees fit.

Part 8 of the Civil Procedure Rules 1998 applies to this claim which is made pursuant to CPR Part 49 and Practice Direction 49A paragraph 15.

The Company will rely on the First Witness Statement of Paul Brough to be filed in support of this Claim.

### Statement of Truth
*(I believe)(The Claimant believes) that the facts stated in these particulars of claim are true.
* I am duly authorised by the claimant to sign this statement.

Full name   HANNAH CRAWFORD

Name of claimant's legal representative's firm   KIRKLAND + ELLIS INTERNATIONAL LLP

signed                                                           position or office held   ASSOCIATE SOLICITOR
   *(Claimant)(Litigation friend)                          (if signing on behalf of firm or company)
   (Legal representative's solicitor)

                                                                                    *delete as appropriate

KIRKLAND AND ELLIS INTERNATIONAL LLP
30 St Mary Axe, London EC3A 8EP
Tel: 020 7469 2000
Fax: 020 7469 2001
email: kon.asimacopoulos@kirkland.com /
matthew.czyzyk@kirkland.com /
hannah.crawford@kirkland.com

Claimant's or claimant's legal representative's address to which documents should be sent if different from overleaf. If you are prepared to accept service by DX, fax or e-mail, please add details.

Ref: 25743-2