James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Adam C. Paul, P.C. (*pro hac vice* pending)
Catherine Jun (*pro hac vice* admission pending)
Gerardo Mijares-Shafai (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| NOBLE GROUP LIMITED, | Case No. 18-[_____] (___) |
| Debtor in a Foreign Proceeding.[1] | |

## DECLARATION OF KON ASIMACOPOULOS AS ENGLISH COUNSEL TO THE DEBTOR IN SUPPORT OF VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

I, Kon Asimacopoulos, declare under penalty of perjury as follows to the best of my knowledge, information, and belief:

1.       I am a solicitor duly admitted to practice in England and Wales, a partner with the firm of Kirkland & Ellis International LLP, and counsel to Noble Group Limited ("Noble" or the "Debtor")[2]. The Debtor has proposed a scheme of arrangement (the "Scheme") to its creditors

---

[1]   The last four digits of Noble Group Limited's overseas company number are 5268. The mailing address of Noble Group Limited's corporate office is, 11th floor, 33 Cavendish Square, Marylebone, London W1G 0PW United Kingdom.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Verified Petition") [Docket No. 2].

(the "Scheme Creditors") under Part 26 of the Companies Act 2006 of England & Wales (the "Companies Act"), captioned *In the Matter of Noble Group Limited* (the "English Proceedings") currently pending before the High Court of Justice, Chancery Division, Companies Court sitting in London, England (the "English Court").[3]  Kirkland & Ellis International LLP acts for the Debtor in the English Proceedings, and I am personally familiar with those proceedings.

2.      I submit this declaration in support of the Verified Petition filed by the Debtor in order to describe for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") the scheme of arrangement processes provided by English law and to inform the Bankruptcy Court of the procedures and the timeline of events in the English Proceedings.

3.      This declaration is comprised of both statements of legal opinion and statements of fact.  Where the matters stated in this declaration are statements of legal opinion, such statements represent my view of English law as a practicing solicitor.

4.      Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true.  Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information supplied to me by or on behalf of the Debtor and are true to the best of my knowledge, information and belief.

---

[3]      The Debtor has also proposed a scheme of arrangement in Bermuda (the "Bermuda Scheme") pursuant to the Companies Act 1981 of Bermuda. The Bermuda Scheme and the English Scheme are inter-conditional upon each other, *i.e.*, the English Scheme shall not be effective unless and until the Bermuda Scheme is effective and *vice versa*.

**Professional Background**

5.      My practice, in over 14 years since my qualification, has focused on all aspects of corporate restructuring and insolvency, in addition to matters involving capital markets, project finance, litigation, and corporate governance.

6.      I have had considerable experience in matters related to English insolvency law. In particular, I have advised companies, creditors, administrators, and liquidators in a large number of administrations, winding-up proceedings, insolvency restructurings, and multinational reorganizations. I have advised numerous companies on the preparation of schemes of arrangement under the Companies Act.

**The Debtor**

7.      I understand that Noble functions as the ultimate holding company of a number of non-debtor companies that together, with Noble, comprise "Noble Group."  Noble Group was established over 30 years ago and became one of the world's largest commodity traders by volume. Noble Group operates corporate hubs in London, Hong Kong and Singapore.  I further understand that the Debtor has initiated the English Proceedings in an attempt to restructure the Scheme Creditors' claims against the Debtor in accordance with the terms set forth under that certain restructuring support agreement ("RSA") dated March 14, 2018 between, amongst others, the Debtor, the Ad Hoc Group and Deutsche Bank AG, to which ING as an Existing Trade Finance Provider acceded on March 27, 2018.  Further detail on the background to, and terms of, the restructuring is set forth in the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of the Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief under Chapter 15 of the Bankruptcy Code* (the "Brough Declaration").

3

8.      I understand that Paul J. Brough is the Debtor's proposed foreign representative (the "Foreign Representative") and has respectfully requested entry of an order recognizing the Foreign Representative as a "foreign representative" as defined in section 101(24) of title 11 of the United States Code (the "Bankruptcy Code") and recognizing the English Proceedings as "foreign main proceedings" pursuant to sections 1517(a) and (b)(1) or, in the alternative, as "foreign nonmain proceedings" pursuant to sections 1517(a) and (b)(2) of the Bankruptcy Code.

### Statements of English Law and Practice

**II.      Scheme of Arrangement.**

9.      Sections 895 to 899 of the Companies Act permit "schemes of compromise or arrangement" (commonly, "schemes of arrangement" or "schemes") between an English company (and certain foreign companies) and its creditors or any class of its creditors.[4]  Schemes are enforceable upon each and every creditor of the relevant creditor class subject to the scheme, as applicable, with the consent of a statutory majority of the company's creditors in each separate class.[5]  A scheme must be a genuine and effective arrangement or compromise.  There must be some sort of advantage gained by those creditors of the company that participate in the scheme that compensates the creditors for the scheme's alteration of their rights.  A scheme that simply expropriates the rights of its creditors is not a compromise or arrangement with the company. *See, e.g.*, *Re NFU Development Trust Ltd* [1973] 1 All ER 135.

10.      A scheme of arrangement is therefore a very useful tool for restructuring all or a certain part of a company's debts.  Notably, one of the uses for schemes of arrangement is the

---

[4]    Attached hereto as **Exhibit A** is a true copy of Sections 895 to 899 of the Companies Act.

[5]    Schemes of arrangement can also be used to implement compromises or arrangements with the members of a company, or any class of members of a company.  For the purposes of this Declaration, reference is made only to schemes which involve a compromise between a company and its creditors.

restructuring of debts of companies that are in financial distress, even if those companies are not, in fact, insolvent (or in a formal insolvency process).

11.    The scheme process can be commenced by a company, any creditor of a company, a liquidator of a company being wound up, or an administrator of a company in administration (section 896(2) of the Companies Act).   The applicant begins with the preliminary step of circulating a letter, known as a "practice statement letter," to all creditors who will be subject to the compromise or arrangement contemplated by the proposed scheme.   Among other things, the practice statement letter will typically set out the applicant's proposed scheme classes and the applicant's case for why the English court has jurisdiction for the scheme.   The practice statement letter will notify the recipient creditors that they have the right to attend the court hearings for the scheme and to object if they consider it necessary.

12.    The scheme process begins when an application is made to the English Court in accordance with the Companies Act requesting permission for a hearing (known as a "convening hearing") to convene a separate meeting (a "scheme meeting") of each class of the company's creditors proposed to be subject to the scheme to allow them to consider and vote on the proposed compromise or arrangement (section 896 of the Companies Act).   Under English law, creditors of a company will form a class for the purpose of voting on the scheme if those creditors' rights against the company, both before and after the implementation of the compromise or arrangement in the proposed scheme, are not so dissimilar as to make it impossible for them to consult together, in relation to the proposed compromise or arrangement, with a view to their common interest taking into account, among other things, the relevant comparator.[6] *See Sovereign*

---

[6]    In applying the test as to whether such classes are properly constituted, the relevant comparator, *i.e.*, the hypothetical likely alternative to the proposed restructuring, is identified, and the rights of the creditor class in such scenario is analyzed.  For example, if a company is insolvent, the relevant comparator is typically liquidation.

*Life Assurance Company (In Liquidation) v Dodd* [1892] 2 QB 573; *see also Re Marconi Corporation plc and Marconi plc* [2003] EWHC 663 (Ch).  The applicant for the scheme will propose the creditor classes to the English Court as part of its convening hearing application; however, the decision as to whether the classification of creditors is correct is ultimately one for the English Court, and, in deciding whether to order a meeting of the creditors or class of creditors (as the case may be), the English Court will consider whether or not the proposed classes are properly constituted (*e.g.*, if certain creditors are obtaining a material benefit through the scheme which is not being made available to the wider creditor body); *see Practice Statement (Companies: Schemes of Arrangement)* [2002] 1 WLR 1345.  Scheme creditors are entitled to attend the convening hearing to voice any concerns regarding the proposed scheme, including the composition of the proposed voting class or classes of scheme creditors.

13.     The scheme application is supported by a witness statement and a draft explanatory statement, which is a disclosure document provided to scheme creditors (described below in more detail).  At the convening hearing, the English Court will decide whether to grant the applicant permission to convene a meeting or meetings of the creditors or classes of creditors (as the case may be) to consider and vote upon the proposed compromise or arrangement.  In making its decision, the English Court will consider jurisdictional issues, and the composition of the proposed voting class or classes of scheme creditors.  If the English Court does grant the application, it will issue an order authorizing the company to convene a scheme meeting.  *See* Companies Act § 896(1).

14.     Once permission to convene a scheme meeting has been granted by the English Court, the debtor then sends notice of the scheme meeting and an explanatory statement (which

commonly includes the terms of the scheme itself) to all scheme creditors. Section 897 of the Companies Act sets out what information must be contained in the explanatory statement.

15.     To become legally binding on the company and on all the creditors in the relevant classes:

a.     a majority in number representing not less than 75 percent in value of each class of creditors, present and voting in person or by proxy, must vote in favor of the scheme of arrangement at the scheme meeting for that creditor class;

b.     the English Court must subsequently sanction the scheme of arrangement as approved by the creditors at the scheme meeting; and

c.     a copy of the order of the English Court to that effect must subsequently be delivered to the Registrar of Companies in England and Wales, at which point the scheme becomes binding.

16.     Once the convening order is issued, notice of the scheme meeting must be given to all scheme creditors prior to the meeting in accordance with the convening order. Such notice must be accompanied by the explanatory statement containing sufficient information regarding the company and the effects of the proposed compromise or arrangement so as to allow a typical scheme creditor to make a reasonable decision regarding whether to support the proposed scheme. I understand that the explanatory statement is comparable to the disclosure statement required under section 1125 of the Bankruptcy Code for solicitation of votes on a chapter 11 plan. Scheme creditors are entitled to attend the scheme meeting in person or by proxy and to ask questions regarding the proposed scheme.

17.     As noted above, each class of scheme creditors will consider and vote on the proposed scheme separately. A majority in number of those present and voting in person or by proxy at the scheme meeting of each class of creditors, representing at least 75 percent in value of that class of scheme creditors, must vote in favor of the scheme in order for the scheme to be approved. *See* Companies Act § 899(1). If any class of scheme creditors does not approve the

scheme, the scheme cannot proceed. Thus, unlike the confirmation provisions of chapter 11 of the Bankruptcy Code, a scheme does not have a mechanism for "cramming down" classes that do not vote in favor of the scheme.

18.     The voting majorities are confirmed by a chairman appointed for the purpose of conducting the scheme meeting. To confirm the voting majorities, the chairman (often with the assistance of an agent appointed specifically to assist the company with this task) tabulates the votes of scheme creditors submitted. The value of each scheme creditor's claim for voting purposes will typically be the face value of the actual claim of that scheme creditor (with discounts applying to claims that are unascertained, contingent or disputed in part) against the company under the existing debt documents as of a specific date fixed prior to the scheme meeting. If the requisite majorities of attending and voting scheme creditors approve the scheme, the chairman provides a sworn statement to the court as evidence of the result.

19.     Following the scheme meetings, the company will apply to the English Court to sanction the scheme at a second hearing, which is referred to as a "fairness hearing" or "sanction hearing", to determine whether the English Court should sanction, or approve, the scheme and make the compromise or arrangement binding on all of the scheme creditors, irrespective of how they voted on the scheme. I understand that the sanction hearing is comparable to a confirmation hearing on a chapter 11 plan of reorganization under section 1128 of the Bankruptcy Code. At the sanction hearing, all scheme creditors have an opportunity to raise questions and objections to the scheme and present evidence.

20.     At or following the sanction hearing, the English Court may either: (i) unconditionally sanction the scheme; (ii) sanction the scheme conditional upon certain modifications or amendments to the scheme; or (iii) refuse to sanction the scheme. In deciding

whether to sanction the scheme at the sanction hearing, the English Court will consider whether:

    a.    the compromise or arrangement proposed by the scheme is such that an intelligent and honest person, being a member of the relevant class of scheme creditors concerned and acting in respect of his interest, might reasonably approve, *see Re Dorman Long & Co Ltd (1934)* 1 Ch 635;

    b.    the scheme is fair, taking into account the interests of the scheme creditors, the nature of the scheme's impact upon dissenting scheme creditors, and whether each class was fairly represented by those attending the scheme meeting acting in good faith; and

    c.    the applicable statutory and procedural requirements have been fulfilled, including whether the requisite majorities of voting scheme creditors approved the scheme.

21.    The English Court does not judge the business merits of proposed schemes and generally refrains from second-guessing commercial decisions made at scheme meetings.

22.    If the English Court sanctions a scheme, the scheme will only take effect once a certified copy of the English Court's order sanctioning the scheme, known as a "sanction order," has been delivered to the Registrar of Companies of England and Wales.  Upon such delivery, the scheme is binding and effective according to its terms on all scheme creditors, irrespective of notice and their participation at any scheme meeting.

## III.    Releases.

23.    It is commonplace for a scheme that releases scheme creditors' claims against a debtor to require that scheme creditors also release their claims against third parties designed to recover the same liability.[7]  Such releases ensure, among other things, that the company is free

---

[7]    *See, e.g.*, *In re T & N Ltd and others* (No 4) [2006] EWHC 1447 (Ch) (the court held a scheme did not necessarily prohibit the alteration of third party rights, in this case, creditors' rights to pursue asbestos claims against insurers); *Re Lehman Brothers International (Europe) (In administration)* (No 2) [2009] EWCA Civ 1161 (following, *T&N*, Patten LJ held (at paragraph 63) that it was *"entirely logical to regard the court's jurisdiction as extending to approving a scheme which varies or releases creditors' claims against the company on terms which require them to bring into account and release rights of action against third parties designed to recover the same loss. The release of such third party claims is merely ancillary to the arrangement between the company and its own creditors.")*; *In Re La Seda de Barcelona SA* [2010] EWHC 1364 (Ch) (Proudman J applied *T&N* and *Lehman*, and concluded that a third party subsidiary guarantor could be released pursuant to a deed of release executed on behalf of scheme creditors).

from claims of counter-indemnity that might otherwise be brought against it by those third parties, which would otherwise undermine the compromise or arrangement provided for by the scheme. It is also commonplace for schemes to provide for scheme creditors to release any claims they have or may have in the future arising in connection with the scheme itself (and/or the related restructuring, if applicable).  I understand the Foreign Representative will be seeking such releases with respect to the Debtor in the chapter 15 case.

## IV.    Identification of a Debtor's COMI.

24.    In the absence of proof to the contrary, an entity's center of main interests ("COMI") is a debtor's registered office.[8]  This presumption, however, is widely considered to be rebuttable where the factual position, as ascertained by a third party dealing with the company (*i.e.*, a debtor's creditor), would infer that a debtor's COMI is in a country other than where the registered office is based.

25.    The EIR and Recast EIR (as each defined in footnote 8) each use the concept of COMI to determine which member state of the European Union ("EU") is the appropriate jurisdiction to initiate an entity's insolvency proceedings.   The EIR is an EU Regulation concerning the rules of jurisdiction for opening insolvency proceedings in the European Union. It determines which member states' courts have jurisdiction.  The EIR provides that "[t]he 'centre of main interests' should correspond to the place where the debtor conducts the administration of his interests on a regular basis and is . . . ascertainable by third parties."[9]

---

[8]    *See* UNCITRAL Model Law on Cross-Border Insolvency (the "Model Law"), Article 16(3) (The COMI of a debtor is not defined in the Model Law, but Article 16(3) provides that, in the absence of proof to the contrary, the place of the debtor's registered office is presumed to be its COMI.); *see also* EC Insolvency Regulation (1346/2000) (the "EIR"); Recast EU Insolvency Regulation (EU 2015/848) (the "Recast EIR").

[9]    EIR, Recital (13).

26.    The Recast EIR is the further revised and amended form of the EIR.  It incorporates a similar definition of COMI,[10] and codifies the presumption that a Debtor's registered office is its COMI, and that this presumption is rebuttable when "a company's central administration is located in [an EU state] other than that of its registered office, and where a comprehensive assessment of all the relevant factors establishes, in a manner that is ascertainable by third parties, that the company's actual [COMI] is located in that other [EU state]. . . ."[11]  The factors analyzed by English courts in determining where a company's central administration is located include:

a.    where a debtor primarily deals with its customers and trade creditors;

b.    where a debtor's senior management is located;

c.    where a debtor's branding and intellectual property is located;

d.    where a debtor's financing arrangements and dealings with finance creditors occur; and

e.    where restructuring discussions and processes are undertaken.[12]

27.    I have reviewed the Verified Petition at paragraph 45 and the Brough Declaration at paragraph 36, both of which relate to the factual circumstances of the Company's operations in England, and it is my belief that the Debtor's COMI is located in England.[13]

**V.    The Debtor's English Proceedings**

28.    I refer the Bankruptcy Court to the Verified Petition, which sets forth in further detail the Debtor's proposed scheme of arrangement in the English Proceedings.  In brief, the

---

[10]    *See* Recast EIR, Article 3(1) (A debtor's COMI "shall be the place where the debtor conducts the administration of its interests on a regular basis and which is ascertainable by third parties.").

[11]    Recast EIR, Recital (30).

[12]    *See Videology Ltd, Re Cross-Border Insolvency Regulations 2006* [2018] EWHC 2186 (Ch) at [52]-[71].

[13]    *See* Verified Petition ¶ 45; Brough Decl. ¶ 36.

English Proceedings are a key component of Noble's overarching goal of restructuring its debts and liabilities.

29.     The convening hearing took place before the English Court over two days, starting on October 12, 2018.  At the conclusion of the hearing, the English Court granted the relief sought by the Debtor and entered an order (the "Convening Order") (a) authorizing the Debtor to convene meetings of the Scheme Creditors (the "English Scheme Meetings") to be held on November 8, 2018 to consider and vote upon the Scheme and (b) approving the appointment of the Foreign Representative.[14]

30.     I believe that the provisions of the Convening Order, as entered by the English Court, are appropriate and advisable; they provide for procedural fairness with respect to the manner in which the subsequent events relating to the Scheme will proceed.  The provisions ensure that the Scheme Creditors are properly notified of the English Scheme Meetings and therefore will have the opportunity to raise questions and objections to the Scheme at the English Scheme Meetings.

31.     It is currently anticipated that the sanction hearing in respect of the Scheme will be held on or around November 12, 2018.  If the English Court enters the order sanctioning the Scheme (the "Sanction Order"), then upon delivery of the Sanction Order to the Registrar of Companies of England and Wales, the Scheme will become effective under English law and thereby binding on all Scheme Creditors wherever located.  However, this Court's issuance of an order recognizing the Scheme in the United States under chapter 15 of the Bankruptcy Code is a

---

[14]    A copy of the order entered by the English Court convening the Scheme Creditors is attached as Exhibit 3 of the Form Petition.

condition precedent to the implementation of the Scheme.[15] Thus, though effective under English law, the Restructuring and the Scheme may not be implemented unless and until this Court has issued an order recognizing the Scheme and all other conditions precedent to the Restructuring and the Scheme have been satisfied.[16]

      32.      Accordingly, the relief requested by the Foreign Representative under chapter 15 of the Bankruptcy Code is necessary to both implement the Scheme and give effect to the Scheme in the United States, and such relief will best assure an economical, and efficient administration of the Scheme that protects the best interests of the Debtor and the Scheme Creditors.

*[Remainder of page intentionally left blank]*

---

[15] *See* Brough Decl. ¶ 19.

[16] *See* Verified Petition, Ex. B, Part A, Section 5.2.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 16th day of October 2018.

Kon Asimacopoulos
Solicitor
Kirkland & Ellis International LLP

**<u>Exhibit A</u>**

**Sections 895 to 899 of the Companies Act**

UK Statute 2006 c. 46 Pt 26 s. 895

**Companies Act 2006 c. 46**

**Part 26 ARRANGEMENTS AND RECONSTRUCTIONS**

**Application of this Part**
**s. 895 Application of this Part**

Superseded Legislation:
Analysis (Commencement Information)

This version in force from: **April 6, 2008** to **present**



Image 1 within document in PDF format.

**895** Application of this Part
(1) The provisions of this Part apply where a compromise or arrangement is proposed between a company and–
    (a) its creditors, or any class of them, or

    (b) its members, or any class of them.

(2) In this Part–

"arrangement" includes a reorganisation of the company's share capital by the consolidation of shares of different classes or by the division of shares into shares of different classes, or by both of those methods; and

"company" –
    (a) in section 900 (powers of court to facilitate reconstruction or amalgamation) means a company within the meaning of this Act, and

    (b) elsewhere in this Part means any company liable to be wound up under the Insolvency Act 1986 (c. 45) or the Insolvency (Northern Ireland) Order 1989 (S.I. 1989/2405 (N.I. 19)).

(3) The provisions of this Part have effect subject to Part 27 (mergers and divisions of public companies) where that Part applies (see sections 902 and 903).
Pt 26 s. 895Limited Liability Partnerships (Application of Companies Act 2006) Regulations 2009/1804, Pt 10 reg. 45(1)Modified in relation to LLPsPt 26 s. 895(2)Co-operative and Community Benefit Societies and Credit Unions (Arrangements, Reconstructions and Administration) Order 2014/229, Sch. 2 para. 3
art. 2(3)
Modified in relation to a relevant societyWater Consolidation (Consequential Provisions) Act 1991 c. 60, Sch. 1 para. 40Modified in relation to a company or body corporate which is liable to be wound up but for 1991 c.56 s.25
Arrangement of Act

Crown Copyright material is reproduced with the permission of the Controller of HMSO and the Queen's Printer for Scotland

UK ST 2006 c. 46 Pt 26 s. 895

© 2018 Thomson Reuters.

UK Statute 2006 c. 46 Pt 26 s. 896

**Companies Act 2006 c. 46**

**Part 26 ARRANGEMENTS AND RECONSTRUCTIONS**

Meeting of creditors or members
s. 896 Court order for holding of meeting

Superseded Legislation:
Analysis (Commencement Information)

This version in force from: **April 6, 2008** to **present**


Image 1 within document in PDF format.

**896** Court order for holding of meeting
(1)  The court may, on an application under this section, order a meeting of the creditors or class of creditors, or of the members of the company or class of members (as the case may be), to be summoned in such manner as the court directs.

(2)  An application under this section may be made by–
    (a)  the company,

    (b)  any creditor or member of the company, [...][1]

[
    (c)  if the company is being wound up, the liquidator, or

    (d)  if the company is in administration, the administrator.

][1]

[

(3)  Section 323 (representation of corporations at meetings) applies to a meeting of creditors under this section as to a meeting of the company (references to a member of the company being read as references to a creditor).

][2]
Pt 26 s. 896Limited Liability Partnerships (Application of Companies Act 2006) Regulations 2009/1804, Pt 10 reg. 45(1)Modified in relation to LLPs

Footnotes

[1]    S.896(2)(c)-(d) substituted for s.896(2)(c) subject to savings specified in SI 2008/948 arts 11 and 12 by Companies Act 2006 (Consequential Amendments etc) Order 2008/948 Sch.1(2) para.249(2) (April 6, 2008)

[2]    Inserted subject to savings specified in SI 2008/948 arts 11 and 12 by Companies Act 2006 (Consequential Amendments etc) Order 2008/948 Sch.1(2) para.249(3) (April 6, 2008)

Arrangement of Act

Crown Copyright material is reproduced with the permission of the Controller of HMSO and the Queen's Printer for Scotland

UK ST 2006 c. 46 Pt 26 s. 896

**End of Document**

© 2018 Thomson Reuters.

UK Statute 2006 c. 46 Pt 26 s. 897

**Companies Act 2006 c. 46**

**Part 26 ARRANGEMENTS AND RECONSTRUCTIONS**

Meeting of creditors or members
s. 897 Statement to be circulated or made available

Superseded Legislation:
Analysis (Commencement Information)

This version in force from: **April 6, 2008** to **present**

Image 1 within document in PDF format.

**897** Statement to be circulated or made available
(1) Where a meeting is summoned under section 896–
    (a) every notice summoning the meeting that is sent to a creditor or member must be accompanied by a statement complying with this section, and

    (b) every notice summoning the meeting that is given by advertisement must either–
        (i) include such a statement, or

        (ii) state where and how creditors or members entitled to attend the meeting may obtain copies of such a statement.

(2) The statement must–
    (a) explain the effect of the compromise or arrangement, and

    (b) in particular, state–
        (i) any material interests of the directors of the company (whether as directors or as members or as creditors of the company or otherwise), and

        (ii) the effect on those interests of the compromise or arrangement, in so far as it is different from the effect on the like interests of other persons.

(3) Where the compromise or arrangement affects the rights of debenture holders of the company, the statement must give the like explanation as respects the trustees of any deed for securing the issue of the debentures as it is required to give as respects the company's directors.

(4) Where a notice given by advertisement states that copies of an explanatory statement can be obtained by creditors or members entitled to attend the meeting, every such creditor or member is entitled, on making application in the manner indicated by the notice, to be provided by the company with a copy of the statement free of charge.

(5) If a company makes default in complying with any requirement of this section, an offence is committed by–
    (a) the company, and

    (b) every officer of the company who is in default.
 This is subject to subsection (7) below.

(6) For this purpose the following are treated as officers of the company–
    (a) a liquidator or administrator of the company, and

    (b) a trustee of a deed for securing the issue of debentures of the company.

(7) A person is not guilty of an offence under this section if he shows that the default was due to the refusal of a director or

trustee for debenture holders to supply the necessary particulars of his interests.

(8)  A person guilty of an offence under this section is liable–
    (a)  on conviction on indictment, to a fine;

    (b)  on summary conviction, to a fine not exceeding the statutory maximum.

Pt 26 s. 897 Limited Liability Partnerships (Application of Companies Act 2006) Regulations 2009/1804, Pt 10 reg. 45(1) Modified in relation to LLPs

Arrangement of Act

Crown Copyright material is reproduced with the permission of the Controller of HMSO and the Queen's Printer for Scotland

UK ST 2006 c. 46 Pt 26 s. 897

© 2018 Thomson Reuters.

UK Statute 2006 c. 46 Pt 26 s. 898

**Companies Act 2006 c. 46**

**Part 26 ARRANGEMENTS AND RECONSTRUCTIONS**

Meeting of creditors or members
s. 898 Duty of directors and trustees to provide information

Superseded Legislation:
Analysis (Commencement Information)

This version in force from: **April 6, 2008** to **present**

Image 1 within document in PDF format.

**898** Duty of directors and trustees to provide information
(1)  It is the duty of–
    (a)  any director of the company, and

    (b)  any trustee for its debenture holders,
 to give notice to the company of such matters relating to himself as may be necessary for the purposes of section 897 (explanatory statement to be circulated or made available).

(2)  Any person who makes default in complying with this section commits an offence.

(3)  A person guilty of an offence under this section is liable on summary conviction to a fine not exceeding level 3 on the standard scale.
Pt 26 s. 898Limited Liability Partnerships (Application of Companies Act 2006) Regulations 2009/1804, Pt 10 reg. 45(1)Modified in relation to LLPs
Arrangement of Act

Crown Copyright material is reproduced with the permission of the Controller of HMSO and the Queen's Printer for Scotland

UK ST 2006 c. 46 Pt 26 s. 898

**End of Document**                                                                                     © 2018 Thomson Reuters.

UK Statute 2006 c. 46 Pt 26 s. 899

**Companies Act 2006 c. 46**

**Part 26 ARRANGEMENTS AND RECONSTRUCTIONS**

Court sanction for compromise or arrangement
s. 899 Court sanction for compromise or arrangement

Superseded Legislation:
Analysis (Commencement Information)

This version in force from: **May 12, 2011** to **present**

Image 1 within document in PDF format.

**899** Court sanction for compromise or arrangement

(1) If a majority in number representing 75% in value of the creditors or class of creditors or members or class of members (as the case may be), present and voting either in person or by proxy at the meeting summoned under section 896, agree a compromise or arrangement, the court may, on an application under this section, sanction the compromise or arrangement.

(2) An application under this section may be made by–
    (a)  the company,

    (b)  any creditor or member of the company, [...][1]

[

    (c)  if the company is being wound up, the liquidator, or

    (d)  if the company is in administration, the administrator.

][1]

(3) A compromise or [arrangement][2] sanctioned by the court is binding on–
    (a)  all creditors or the class of creditors or on the members or class of members (as the case may be), and

    (b)  the company or, in the case of a company in the course of being wound up, the liquidator and contributories of the company.

(4) The court's order has no effect until a copy of it has been delivered to the registrar.

[

(5) Section 323 (representation of corporations at meetings) applies to a meeting of creditors under this section as to a meeting of the company (references to a member of the company being read as references to a creditor).

][3]

Pt 26 s. 899Co-operative and Community Benefit Societies and Credit Unions (Arrangements, Reconstructions and Administration) Order 2014/229, Sch. 2 para. 4
art. 2(3)
Modified in relation to a relevant societyLimited Liability Partnerships (Application of Companies Act 2006) Regulations 2009/1804, Pt 10 reg. 45(1)Modified in relation to LLPsScottish and Northern Ireland Banknote Regulations 2009/3056, Sch. 1(1) para. 3(1)
Pt 6 reg. 29
Modified in relation to an authorised bank

Footnotes

[1]     S.899(2)(c)-(d) substituted for s.899(2)(c) subject to savings specified in SI 2008/948 arts 11 and 12 by Companies Act 2006 (Consequential Amendments etc) Order 2008/948 Sch.1(2) para.250(2) (April 6, 2008)

[2]     Word substituted by Companies Act 2006 (Consequential Amendments and Transitional Provisions) Order 2011/1265 art.28(3) (May 12, 2011)

[3]     Inserted subject to savings specified in SI 2008/948 arts 11 and 12 by Companies Act 2006 (Consequential Amendments etc) Order 2008/948 Sch.1(2) para.250(3) (April 6, 2008)

Arrangement of Act

Crown Copyright material is reproduced with the permission of the Controller of HMSO and the Queen's Printer for Scotland

UK ST 2006 c. 46 Pt 26 s. 899

© 2018 Thomson Reuters.